JOHN THOMAS ROSS

V.

PAGE FARLAND (ROSS) CRAW

Record No. 830483

April 25, 1986

Present: All the Justices

*Donald W. Lemons (Minor & Lemons, P.C.*, on brief), for appellant.
*Douglas L. Fleming, Jr. (William B. Hanes; Hanes, Sevila, Saunders & McCahill*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

By decree entered by the trial court on March 1, 1976, Page Farland Ross, now Craw, and John Thomas Ross were divorced *a vinculo matrimonii* on the ground of uninterrupted separation for more than one year. A property settlement agreement included provisions granting custody of the couple's two minor children to the mother and requiring the father to pay child support and the costs of secondary and higher education for the children, health insurance for them, and life insurance for their benefit. The agreement was approved by the trial court and incorporated into the final divorce decree.

Unfortunately, entry of this decree did not bring to a conclusion the bitter litigation between the parties. The present appeal presents the question whether the trial court erred in construing the child support provision of the property settlement agreement.

The original agreement, dated July 31, 1974, contained the following provisions:

2.   The Husband hereby agrees to pay to the wife the sum of FOUR HUNDRED DOLLARS ($400.00) per month for the maintenance and support of each of the aforesaid minor children of the parties, said payments to commence on August 1, 1974, and payable each and every month thereafter on the 1st day of each month until such time as each of said children shall have reached the age of majority, married, or otherwise become emancipated. In the event the wife has excess funds which are not required for the maintenance and support of said children, she agrees to place the same in a savings account for said children for their future maintenance and support and education. It is specifically understood and agreed between the parties hereto that the amount of maintenance and support for each of the said children may not at anytime be decreased; that the amount of maintenance and support for each of the said children may be increased annually in proportion to the increase in cost of living as determined by the Federal Cost of Living Index for the United States, using January 1, 1974, as the base year therefor.

An addendum, dated October 7, 1974, amended a provision irrelevant to the present controversy. A second addendum, dated February 27, 1976, amended several provisions of the agreement including paragraph 2, which was rewritten to read as follows:

2.   The husband hereby agrees to pay to the wife TWO HUNDRED TWENTY FIVE DOLLARS ($225.00) per month for the maintenance and support of each of the aforesaid minor children of the parties, said payments to commence on August 1, 1975, and payable each and every month thereafter on the first of each month until such time that each of said children shall reach the age of twenty-one (21) years, married, or otherwise become emancipated.   The amount of maintenance and support for each of the said children may be increased annually in proportion to the increase in cost of living as determined by the Federal Cost of Living Index for the United States, using January 1, 1974, as the base year therefor.

From January 1977 through August 1980 Ross paid the base support payments plus the percentage of increase shown on the Consumer Price Index, which the parties agree was the standard intended in the agreement. Beginning in September 1980 Ross reduced his payments to the base payments of $225 for each child. Craw moved the trial court for an order requiring Ross to show cause why he should not be held in contempt for reducing the payments. The motion was heard at the same time the court heard evidence in support of Ross's petition for a reduction in support payments. The trial court, by decree entered June 24, 1982, ruled that the language of paragraph 2 of the property settlement agreement was not sufficiently definite to justify holding Ross in contempt. The court denied Craw's motion without prejudice to the contractual rights of the parties, if any, to seek enforcement of the agreement by other proceedings. In the same decree, the court granted Craw's motion to strike Ross's evidence in support of his petition for a reduction in support payments.

Earlier, on June 23, 1981, Craw had filed a petition to enforce the property settlement agreement or in the alternative to have the court order an increase in the amount of child support to be paid by Ross. The court heard evidence *ore tenus* on September 27, 1982, and agreed with counsel for the parties that evidence taken in the recently concluded contempt proceeding also should be considered.

In a letter opinion dated November 10, 1982, the trial judge stated that, although the contract, prepared by Craw's counsel, must be construed against Craw, the court must give effect to the language used, if possible, "consistent with the other provisions of the contract, and the circumstances and intent of the parties." He then stated that to construe "may" as leaving increases in payments to the discretion of the father would make inclusion of the provision in the agreement "an idle act," because a father may always elect to increase support payments. The judge concluded that Craw's construction of the contract giving her the election to require increased payments in accordance with the Consumer Price Index was reasonable and overcame the adverse presumption which she faced as the drafter of the agreement. Finally, the judge was of opinion that Ross would be entitled to an election to reduce payments if a decline in the Consumer Price Index should occur.

The opinion was incorporated into the final decree entered December 21, 1982, which awarded Craw judgment for arrearages, with interest, in the amount of $12,552.37, and directed Ross to pay the monthly child support payments of $225 per child plus or minus an annual adjustment determined by the Consumer Price Index. On appeal, the parties agree that the crucial question is whether the court erred in construing the word "may" in the agreement to be mandatory.

Both parties were represented by counsel during the negotiations leading to the original property settlement agreement and the addendum modifying the child support obligation. In the course of the two evidentiary hearings, the court heard testimony from Ross and his former attorney, Charles S. Cox, Jr., and from Craw and her former attorney, Jean Harrison Clements.

Ross testified that before the parties reached their original agreement they met three times to negotiate an agreement. At their first meeting, held at Cox's office with both attorneys present, Ross refused to agree to any terms proposed by Craw, including the Consumer Price Index provision. He said that, given the inflationary condition of the economy at the time, he knew the cost-of-living index could increase his child support obligation to a "prohibitive point" for him; he told Craw and Clements he would not agree to a mandatory increase based on the Consumer Price Index.

Following this meeting, Ross said he and Craw met at their home and discussed every aspect of the agreement, including the support and cost-of-living provisions. Finally, the parties met at Clements's office, again with both attorneys present. Ross testified that he raised questions about the cost-of-living increase, and Clements told him he "could have the penalty of going to jail" if the increase were mandatory and he failed to pay it. Ross responded that he could not agree to such a mandatory provision. According to Ross, Clements then read the clause using the word "may" and, upon Cox's assertion that he was satisfied with the language, Ross agreed to its inclusion in the agreement. Had Clements not explained the language as discretionary, Ross said he would not have agreed to its inclusion.

Ross testified that he intended the increase to be discretionary. Facing the prospect of financial difficulty resulting from failure of a business venture in which he was then involved, he intended to

pay the cost-of-living increase only so long as he was financially able.

Prior to execution of the addendum reducing the child support obligation, Ross testified, the parties met again at Clements's office, with Clements, Cox, and Craw's father also present. Language from the original agreement providing that the amount of child support "may not at any time be decreased" was omitted in the new provision, and Ross understood that the meaning of "may" in the clause governing the cost-of-living increase did not change.

Ross paid Craw the child support, together with cost-of-living increases, from 1977 until September 1980. In June 1980, however, according to his testimony, he told her he would have to stop paying the increases because of his financial situation. He testified that at this time, as he had on one previous occasion, he told her payment of the increase was discretionary, not mandatory. From September 1980 he paid support at the base rate of $450 established by the addendum. Ross testified without contradiction that a judgment in the sum of $1,000,000 had been filed against him, and that the Internal Revenue Service had recorded a tax lien against him in the amount of $100,000.

Cox's testimony confirmed Ross's account of the negotiations. Because Ross was unable to afford the $800 monthly obligation imposed by the original agreement, the parties negotiated a reduction as reflected in the addendum. Cox said the language of the original draft, "may," was discussed and was repeated in the addendum provision, with "the intent that it was to be discretionary but not mandatory."

Craw testified that she and Ross discussed and agreed upon inclusion of the Consumer Price Index provision before the original agreement was reached. Under her understanding of the provision, "may" was used to allow for years in which there might be no increase in the Consumer Price Index. She did not recall any discussion of this provision after execution of the original agreement.

Clements testified that she drafted the original agreement and the addendum. She said she had no recollection of a joint meeting, or whether such meeting occurred, prior to execution of the original agreement or of any questions by Ross concerning interpretation of the language. Nor did she recall any communication with Cox about this language. She explained her choice of the language used in the provision, saying she intended to carry out what Craw

had expressed to her as the agreement of the parties. Clements said she selected the language intending "to have a CPI which would be conditioned only upon the fact that there would indeed be a cost of living increase." According to Clements, there was no discussion of the Consumer Price Index clause at the time the addendum was executed. She testified that she persuaded Craw to agree to deletion of the prohibition against decreasing child support payments, included in the original agreement, because she explained that such a provision was unenforceable.

As we have noted in the past, the word "shall" is primarily mandatory in its effect and the word "may" is primarily permissive. *See Pettus* v. *Hendricks*, 113 Va. 326, 330, 74 S.E. 191, 193 (1912). In *Pettus*, we stated that "courts, in endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, will construe 'may' and 'shall' as permissive or mandatory in accordance with the subject matter and context." *Id.* Despite this reference to construction of contract language, however, the case involved construction of a statute using the word "shall." Likewise, other cases in which we have construed "may" or "shall" have generally involved statutory language. *See, e.g., Price* v. *Commonwealth*, 209 Va. 383, 387, 164 S.E.2d 676, 679 (1968)("may"); *Schmidt* v. *City of Richmond*, 206 Va. 211, 218, 142 S.E.2d 573, 578 (1965) ("shall"); *Creteau* v. *Phoenix Assurance Co.*, 202 Va. 641, 643-44, 119 S.E.2d 336, 339 (1961) ("shall"); *Spindel* v. *Jamison*, 199 Va. 954, 957, 103 S.E.2d 205, 208 (1958) ("may"); *Huffman* v. *Kite*, 198 Va. 196, 202, 93 S.E.2d 328, 332 (1956) ("shall"); *Board of Sup'rs* v. *Weems*, 194 Va. 10, 15, 72 S.E.2d 378, 381 (1952) ("may"); *Masters* v. *Hart*, 189 Va. 969, 979, 55 S.E.2d 205, 210 (1949) ("may"); *Bryant* v. *Tunstall*, 177 Va. 1, 6, 12 S.E.2d 784, 786-87 (1941) ("shall"); *Board of Supervisors* v. *Cahoon*, 121 Va. 768, 773, 94 S.E. 340, 341 (1917) ("may"); *Meade* v. *Meade*, 111 Va. 451, 453, 69 S.E. 330, 331 (1910) ("shall"). The parties have cited no cases, and we are aware of none, in which we have construed these words as used in a contract.

A well-settled principle of contract law dictates that "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Globe Company* v. *Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965). A contract is not deemed ambiguous merely because the parties disa-

gree as to the meaning of the language they used to express their agreement. *Wilson* v. *Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). Because the question whether a contract is ambiguous is one of law, this Court is not bound by the trial court's construction. *Id.* at 187-88, 313 S.E.2d at 398. We adhere to the view that contracts must be construed as written. *Id.* at 187, 313 S.E.2d at 398; *Meade* v. *Wallen*, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984); *Magann Corp.* v. *Electrical Works*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962).

■ The property settlement agreement and addenda are not rendered ambiguous by use of the word "may" in the child support provision. The evidence shows the parties selected the contract language, and specifically the word "may," which ordinarily imports discretion, after extensive negotiations concerning the support provision. The language was drafted by Craw's counsel, and both parties were represented by attorneys undoubtedly aware of the difference between discretionary and mandatory language.

Throughout the agreement, the parties defined their respective rights and obligations employing mandatory language. The following excerpts are examples of such language: "husband agrees that the wife shall have," "husband shall have," "husband hereby agrees to pay," "husband agrees to be responsible for and to pay," and "husband agrees to repay." The word "shall" appears repeatedly in the agreement.

In certain provisions of the agreement, the parties used the word "may." One such provision states, "The husband and wife agree that the wife may continue to occupy the real property owned jointly by the parties . . . until sold. . . . At such time as the wife has vacated the premises as provided herein, the husband may determine whether or not he desires to occupy said premises or lease said premises to a third party." Clearly, the parties used "may" in this provision to denote permission, as it cannot reasonably be argued that they intended to mandate where one or both of them should live following their separation. Indeed, as the remainder of this provision indicates, the parties contemplated that Craw might vacate the property and expressly provided for that eventuality.

Another paragraph of the agreement provides, "It is mutually agreed and understood between the parties hereto that each may freely sell or otherwise dispose of his or her own property by gift, deed or will without in any wise encumbering the right of the

other . . . ." This provision can be interpreted to mean only that the parties, in their own discretion, can sell their respective properties.

Finally, the agreement provides that, in a suit for divorce, the agreement "may be submitted" to the court for affirmation and its terms "may be made a part" of the divorce decree. It is apparent that "may" is susceptible to only a permissive meaning in this clause, for the parties cannot by agreement mandate the terms of a court's decree. *See* Code § 20-109.1 (court *may* affirm, ratify, and incorporate agreement by reference in divorce decree). These uses demonstrate that the parties employed "may" in instances in which they intended a permissive meaning, using "shall" or other mandatory language to denote an obligation or duty.

Craw asserts that the word "may" referred only to the contingency of no increase in the Consumer Price Index, while the provision for payment of an increase was mandatory. This contention is undermined by a review of the agreement, which provides for contingent events in two other instances by use of mandatory language to denote the obligation and permissive language to denote the contingency. In one provision, the parties agreed that husband "will hold wife harmless for any and all such sums of money . . . that she may be caused to incur." In another, wife "agree[d] to pay her court costs and counsel fees in any suit for divorce that may be filed to dissolve the marriage of the parties." Similarly, had the parties intended the meaning which Craw now assigns to the language at issue, they could have provided "that the amount of maintenance and support for each of the said children *shall* be increased annually in proportion to *any* increase in cost of living *as may be determined* by the Consumer Price Index."

██ The trial court ruled that "may" must be interpreted as mandatory to give effect to all the language of the agreement; otherwise, inclusion of the clause governing an increase in support was an idle act. It is true that contract language will not be treated as meaningless where it can be given a reasonable meaning. *Winn* v. *Aleda Construction Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984); *Berry* v. *Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983). Parties are not presumed to have included a provision of no effect. *Hughes & Co.* v. *Robinson Corp.*, 211 Va. 4, 7, 175 S.E.2d 413, 415 (1970).

██ These principles, however, do not require that "may" be given mandatory effect. As Ross argued before us, words are not

meaningless merely because they impose no legal obligation. Parties frequently include precatory language in agreements, particularly in those involving family obligations, to express a sentiment, wish, or desire with regard to the parties' future course of conduct. Such language, while imposing no legal duty, cannot be said to be idle or purposeless. The precatory language used in the agreement can reasonably be construed to express the hope, or even expectation, of the parties that child support payments would be increased in direct proportion to the rate of inflation.

Accordingly, we will reverse the decree insofar as it awarded judgment to Craw in the amount of $12,552.37 for arrearages in child support and interest. We will remand the case to the trial court for a determination of proper child support payments consistent with this opinion.

*Reversed and remanded.*