953 F.2d 641
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America for the Use and Benefit of ACE
SHEET METAL WORKS, INCORPORATED, Plaintiff-Appellee,
v.
BAYPORT CONSTRUCTION CORPORATION; the Aetna Casualty and
Surety Company, Defendants-Appellants,
and
Ways Mechanical, Incorporated, Defendant.
UNITED STATES of America for the Use and Benefit of ACE
SHEET METAL WORKS, INCORPORATED, Plaintiff-Appellee,
v.
WAYS MECHANICAL, INCORPORATED, Defendant-Appellant,
and
Bayport Construction Corporation; the Aetna Casualty and
Surety Company, Defendants.
 Nos. 91-2323, 91-2324.
 United States Court of Appeals, Fourth Circuit.
 Submitted Nov. 19, 1991.
Decided Jan. 29, 1992.
As Amended March 2, 1992.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, District Judge. (CA-90-88-N)
 Guilford D. Ware, Martha M. Poindexter, Crenshaw, Ware & Martin, Norfolk, Va., for appellants.
 Benjamin A. Hubbard, III, Outland, Gray, O'Keefe & Hubbard, Chesapeake, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before K.K. HALL and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Bayport Construction Corp. (Bayport), Aetna Casualty & Surety Co., and Ways Mechanical, Inc. (Ways), appeal the district court's judgment holding the three defendants jointly and severally liable to Ace Sheet Metal Works, Inc. (Ace) for a sum of $21,873.07, and holding Ways liable to Bayport and Aetna on their cross-claims for indemnification for any portion of the judgment not paid by Ways. The Appellants claim on appeal that the district court erred by considering evidence concerning the custom and usage of trade in contradiction to the express terms of a construction contract and in finding what the evidence demonstrated. We find that because the contracts signed by the various parties did not clearly reveal which party was responsible for providing certain electrical devices for the construction project at issue here, the district court properly considered evidence of custom and usage in interpreting this contract. In addition, we find that the district court's determination that Ways was responsible for providing the parts in question was not clearly erroneous. Therefore, we affirm.
 
 
 2
 * In August 1987, the United States Navy contracted with Bayport for the construction of a hazardous waste storage addition at the Navy's supply center in Norfolk, Virginia.[1] The specifications contained in the general contract provided that Bayport bore the responsibility for furnishing starters and disconnects which were accessories to the materials supplied by the contractor. Later that month, Bayport subcontracted with Ways to perform the mechanical work specified under the general contract. This subcontract specified that Ways was responsible for supplying the starters and disconnects mentioned in the general specifications.
 
 
 3
 In October 1987, Ways subcontracted with Ace for sheet metal work on the project. The subcontract provided that Ace was responsible for supplying the complete sheet metal duct system, including the accessories specified in the general contract.[2]
 
 
 4
 Ace completed the sheet metal work it was contractually required to perform on September 5, 1989. Later that month, Ace President Darrell L. Mann informed Bayport that he was prepared to pursue legal action if Ace did not receive the unpaid balance of $30,246.24 it was due under its contract. When Ace did not receive payment, Ace sued Ways, Bayport, and Aetna for the unpaid balance. Ways counterclaimed against Ace, stating that it was entitled to withhold the unpaid balance from Ace because Ace had failed to provide the starters and disconnects required by the contract, and because Ace had failed to perform required demolition work. Bayport and Aetna cross-claimed against Ways for any liability to Ace.
 
 II
 
 5
 At the bench trial, Mann testified that he first learned of a problem with Ace's performance of the contract on October 29, 1989. On that day, after Mann asked Ways President Tim Wilson when he could expect the unpaid balance, Wilson told Mann to call Bayport. Wilson said that because Bayport was going to backcharge Ways for Ace's deficient performance in relation to holes in the roof, Ways had to withhold payment from Ace. Mann testified that at no time during construction of the project had he received any demand from either Ways or Bayport to supply twenty-one remote disconnects and twenty-one starters for the exhaust fan units he supplied with the sheet metal duct system.[3]
 
 
 6
 During trial, the district court heard testimony from two expert witnesses, Ronnie Pittman and James Nixon, who testified that in contracts containing the Navy specification at issue here, the mechanical contractor (in this case, Ways) normally provided the remote starters and disconnects. Another expert, mechanical engineer David Kinkaid, testified that the industry norm was that the subcontractor who supplied a particular piece of equipment supplied the accompanying starters and disconnects. Kinkaid further testified, however, that in general the electrical subcontractor was responsible for supplying remote starters and disconnects of the type at issue here.
 
 
 7
 The district court ruled that all three defendants were jointly and severally liable to Ace for $21,873.07. The judgment amount reflected a reduction of $8,373.17 from the $30,246.24 due to Ace because Ace did not complete demolition work it was required to perform under the contract. The district court also ruled in favor of Bayport and Aetna on their cross-claims for indemnification against Ways for any portion of the $21,873.07 judgment not paid by Ways.
 
 III
 
 8
 Appellants first contend that the district court erred in considering custom and usage evidence in interpreting the terms of the contract. The general rule is that contracts should not be mechanically construed; any interpretation adopted by the court must be reasonable and just, and should not act to thwart the intention of the contracting parties.[4] American Realty Trust v. Chase Manhattan Bank, N.A., 281 S.E.2d 825, 831 (Va.1981). In Virginia, ambiguity is no longer a prerequisite before custom and usage may be used to supplement or explain a contract, but this type of extrinsic evidence may not be used where it is inconsistent with the express terms of the contract. Columbia Nitrogen Corp. v. Royster Co., 451 F.2d 3, 8, 9 (4th Cir.1971). Ambiguity exists when language may be reasonably understood in more than one way or refers to two or more things at the same time. Renner Plumbing, Heating & Air Conditioning, Inc. v. Renner, 303 S.E.2d 894, 898 (Va.1983). Whether a contract is ambiguous is a question of law for the court to determine. Ross v. Craw, 343 S.E.2d 312, 316 (Va.1986).
 
 
 9
 We agree with the district court that this contract is ambiguous and that the admission of evidence of business custom did not contradict a term of the contract. Under the terms of the general contract, the general contractor (Bayport) clearly assumed the responsibility for providing equipment and accompanying accessories for the work it performed. In the first subcontract, Bayport plainly transferred the responsibility for providing equipment and accompanying accessories to its mechanical subcontractor, Ways. Because the second subcontract assimilated the specifications contained in the general contract, the responsibility for providing equipment and accompanying accessories (which had been transferred from Bayport to Ways) passed to Ace. However, because no express language in any of the contracts specifically addressed who was responsible for providing the remote units (starters and disconnects) for the exhaust fans, the district court properly considered custom and usage evidence to resolve this question.
 
 
 10
 Appellants also challenge the finding that Ways was responsible under the contract for providing the starters and disconnects at issue here. We find that the district court's ruling was not clearly erroneous. First, although Ace was notified that it had to cure other deficiencies in its work before receiving payment, Ace received no notice that it was expected to provide the starters and disconnects until Ways filed its counterclaim. Second, Ace's president, and the three experts who testified, all stated that mechanical or electrical contractors routinely provided remote disconnects and starters when they performed work under contracts containing Navy specifications of the type at issue here because they possessed the specialized electrical knowledge required to properly install this equipment.[5] Finally, the record shows that the bid Ace submitted on the project specifically excluded starters. Therefore, ample evidence support the district court's ruling.
 
 IV
 
 11
 In conclusion, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Bayport executed a payment bond on the contract with Aetna
 
 
 [2]
 The subcontract which Ways submitted to Ace (and which Ace accepted) provided that Ace would be paid a total of $86,350 for the work it performed
 
 
 [3]
 Mann testified that he first received notice that Ace should have supplied these units in Ways' counterclaim. Mann also testified that Ace's project bid did not include remote starters
 
 
 [4]
 Because Ways drafted its subcontract with Ace, the contract must be strictly construed against Ways. See Winn v. Aleda Constr. Co., 315 S.E.2d 193 195 (Va.1984)
 
 
 [5]
 We reject Appellants' contention that the testimony of the custom of the trade was not sufficiently linked to the type of contract at issue