COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


ANDREW T. SCHNEIDER

v.      Record No.  2078-96-4

DENISE M. SCHNEIDER
                                    MEMORANDUM OPINION[*] BY
and                                 JUDGE ROSEMARIE ANNUNZIATA
                                       SEPTEMBER 9, 1997
DENISE M. SCHNEIDER

v.      Record No.  2153-96-4

ANDREW T. SCHNEIDER


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   M. Langhorne Keith, Judge

            (James W. Korman; Andrea M. Contreras; Bean,
            Kinney & Korman, on briefs), for Andrew T.
            Schneider.

            (MaryEllen Craig; Nancy J. Wuerker; Craig &
            Hirsch, on briefs), for Denise M. Schneider.



     Andrew T. Schneider (husband) and Denise M. Schneider (wife)

appeal the decisions of the circuit court denying, by summary

judgment, husband's motion for modification of spousal support

and wife's motion for attorney's fees.  For the following

reasons, we affirm the circuit court's decisions.

                              I.

     The parties were married in April 1988 and divorced by final

decree entered in December 1994.  The final decree incorporated

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

the parties' property settlement agreement (PSA), which required husband to pay wife $2,150 per month in spousal support. The agreement provided that husband's spousal support obligation would continue,

> for a maximum of fifteen (15) years, [until] the death of either party, the remarriage of the Wife, or the Wife becomes employed earning at least $40,000.00 annually, whichever is sooner; provided, however, either party may seek a modification during the period of said obligation, but in no event beyond fifteen (15) years, based upon a material change of circumstances.

Husband's responses to wife's request for admissions established that a provision had been proposed for incorporation into the PSA, prior to its execution, which would have required wife to make a good faith effort to obtain employment. Husband's responses further established that wife rejected the proposed provision. The final agreement contained no provision requiring wife to seek employment.

In January 1996, husband filed a petition seeking a reduction in spousal support. He alleged that wife's failure to in good faith seek and obtain employment since the entry of the decree constituted a material change of circumstances "from what was reasonably anticipated by the parties at the time of the execution of the said Agreement, i.e. that [wife] would make persistent and good faith efforts to get employment."

It is undisputed that wife was not employed when the decree was entered and that she remained unemployed when husband

2

petitioned for a modification of support.  Husband contended that wife was employable both at the time the decree was entered and when he argued his petition.  Wife contended that she had been fully disabled since prior to the entry of the decree.  Neither party contended that wife's employability had changed since the entry of the decree.

Wife filed a demurrer to husband's petition, which the circuit court overruled.  Following discovery, wife filed a motion for summary judgment, arguing that husband had failed to demonstrate a material change in circumstance.  The court granted wife's motion for summary judgment, finding,

> the PSA is not ambiguous and that counsel is conceding that the wife was unemployed at the time of this agreement and she is unemployed now, and I don't see what the change of circumstances from that day to this is under this agreement, particularly, the attempt of [husband] to insert a good faith obligation on the wife to seek employment which was rejected by wife's counsel and this document was executed.  If this document was ambiguous, if it was, that would certainly in the court's view end this matter.

II.

The trial court made alternative findings.  The court first found the PSA unambiguous.  It refused, therefore, to look beyond the PSA to determine the parties' intentions and found no change of circumstance had occurred based on the parties' representations of wife's employment status and the absence of a requirement in the PSA that she seek or obtain employment.  Alternatively, the court found the PSA ambiguous.  It looked,

3

therefore, to husband's admissions as evidence of the dispositive issue, <u>viz.</u>, whether "what was reasonably anticipated by the parties at the time of the execution of the said Agreement, i.e. that [wife] would make persistent and good faith efforts to get employment" had changed.  Those admissions led the court to the conclusion that the parties' expectations had not changed since the entry of the decree.

The question of whether a contract is ambiguous is one of law, to which we are not bound by the trial court's construction.  <u>E.g.</u>, <u>Ross v. Craw</u>, 231 Va. 206, 213, 343 S.E.2d 312, 316 (1986).  Here, we find the language in the PSA allowing a modification of support upon a material change in circumstance to be, by its very nature, ambiguous.  The trial court's first finding was, therefore, erroneous.  While the PSA enumerated certain, specific criteria affecting husband's support obligation, it also provided generally that husband's support obligation could be modified upon a "material change of circumstance[]."  The determination whether the circumstances existing when the PSA was entered had subsequently changed depended on a determination of what those circumstances initially were, together with an examination of the present, "changed" circumstances which may warrant modification of support.  The court had to look beyond the PSA to resolve the issue, because the PSA itself, addressing "circumstances" generally, does not answer either question.

4

In the present case, although first concluding the PSA was unambiguous, the court nevertheless considered evidence relevant to the issue of whether circumstances had changed since the entry of the decree. Specifically, the court considered husband's admissions in answering the specific question before it, viz., whether "what was reasonably anticipated by the parties at the time of the execution of the said Agreement, i.e. that [wife] would make persistent and good faith efforts to get employment" had changed. The answer, as the trial court correctly found, was no. As demonstrated by the proposed inclusion, but ultimate rejection, of a provision which would have required wife to seek employment, it is manifest that the circumstances under which the parties entered the PSA did not include their intent and expectation that wife would make persistent and good faith efforts to become employed. The trial court's alternative finding was, thus, correct.

Based on this analysis, we disagree with husband's contention that the circuit court improperly decided the issue on summary judgment. As determined from the parties' pleadings and admissions, there were no material facts genuinely in dispute. See Rule 2:21.[1] Since the decree was entered in the present

[1]Contrary to husband's contention, it is unnecessary to rely on wife's answers to husband's requests for discovery to determine the issue. Furthermore, contrary to husband's argument, the overruling of wife's demurrer does not have preclusive effect on the court's award of summary judgment. There is a manifest distinction between the basis for the court's decision on a demurrer, viz., whether the petition stated a claim upon which relief may have been granted, and the basis for the

5

case, wife has remained unemployed.  Furthermore, although the parties disagree as to whether wife is now employable, neither contends that her employability has changed since the entry of the decree.[2]  Finally, the parties did not anticipate that wife would make persistent and good faith efforts to gain employment as a condition of the support husband obligated himself to pay.[3]

III.

In her motion for summary judgment, wife also sought an award of attorney's fees.  She alleged an award of attorney's fees was authorized under paragraphs 9, 11, 12, 14 and 18 of the PSA, as well as under Code § 20-99(5).[4]

Paragraph 11 of the PSA provides:
    In the event that either party defaults

(..continued)
court's decision on a motion for summary judgment, _viz._, whether, after review of the pleadings, orders, and admissions, all coming subsequent to the demurrer, there are material facts genuinely in dispute.

[2]Indeed, husband does not contend that wife is any more or less employable today than she was when the decree was entered.

[3]To the extent husband contends that the law imposed a duty upon wife to reduce her support needs by obtaining employment, rendering her failure to do so over time a material change in circumstance, his contention is inapposite.  Husband bargained away whatever duty the law imposed upon wife to obtain employment to reduce her support needs.  Husband could have litigated the issue of wife's employability and pursued judicial enforcement of the duty he now suggests the law imposes.  He did not.  Instead, he chose to enter the PSA, an agreement suggesting by its very nature a compromise of the parties' interests upon their separation.  Thereafter, the PSA was incorporated into a final decree of the trial court, and the issue of support became final.

[4]Code § 20-99(5) provides that in suits for divorce, annulment, or affirmation, "[c]osts may be awarded to either party as equity and justice may require."

in the performance of any of the provisions of this Agreement, the defaulting party will indemnify the other for all reasonable expenses and costs, including attorney's fees, incurred in successfully enforcing the terms of this Agreement.

Paragraph 9 provides:
Each party shall be free from interference, authority or control, direct or indirect, by the other.  Neither party shall molest, harass, annoy or in any way interfere with the other, and each of the parties hereto shall have full and complete independence of action and conduct in all business and social relations, and the public and private activities of each of them shall be entirely free from all restraint, supervision, control and censure by the other.

Paragraph 12 provides, in part:
The parties hereto agree to accept, and do hereby accept, the covenants and agreements herein contained in full, complete and final settlement of any and all claims and demands of every kind, whether the same be in law or in equity, which either may have against the other, and the parties do hereby agree that this agreement contains the entire undertaking between them and that there are no oral or written promises, inducements or agreements whatsoever between them, except as herein contained.

Paragraph 14 provides:
Each party shall at any time hereafter, take any and all steps and execute, acknowledge and deliver to the other party any and all further instruments and assurances that may be reasonably required by the other, his or her heirs, executors, administrators and assigns, for the purpose of perfecting a clear title to any property referred to in this agreement and for the purpose of giving full force and effect to the intent of the covenants, conditions and agreements contained herein.  In the event

7

either party fails or refuses to do so, or in the event of any default on the part of either party hereto, the costs and expenses of any litigation or other action of any nature necessary to compel compliance herewith, including attorney's fees, shall be borne by the defaulting party.

Paragraph 18 provides:

No modification or waiver of any of the terms of this Agreement shall be valid unless in writing and executed with the same formality as this Agreement. No waiver of a breach or default of any clause of this Agreement shall be deemed to constitute a waiver of any subsequent breach or default of the terms hereof. The failure of any party at any time to insist upon the strict performance of any of the terms or covenants of this Agreement shall not be deemed a waiver of the right to insist upon strict performance of the same or any other term or covenant of this Agreement at any time.

The circuit court found that the PSA contained no provision allowing an award of attorney's fees to the prevailing party in a dispute arising under its terms. The court interpreted the PSA to require an award of attorney's fees, under paragraph 11, only when a party defaulted in his or her performance under the PSA. Finding that husband had not defaulted in his performance, the circuit court granted husband's cross-motion for summary judgment, denying wife's request for attorney's fees.

IV.

Wife does not contend that the court improperly determined this issue by summary judgment; her contention is simply that the court erred as a matter of law. We disagree.

Wife alleges that husband breached and defaulted in his

8

performance of the PSA by filing his petition for a modification of spousal support. She does not dispute that the PSA provided that husband could petition for a modification of support. She alleges, however, that husband's petition, not being premised on a material change in circumstances, was an attempt to impose an obligation on wife that was not contemplated by the PSA. That imposition, she contends, was a breach of his performance under the PSA, entitling her to attorney's fees under paragraph 11.

Specifically, wife alleges that husband breached the "no interference" provisions of paragraph 9 by "attempt[ing] to control and direct the activities of [wife] by alleging a duty that does not exist in the contract." She alleges husband breached the "mutual releases" provisions of paragraph 12 by "not accept[ing] the terms of the Agreement as full and complete compromise and settlement, and attempt[ing] by his Petition to make claims of additional conditions and duties on [wife]." She alleges husband breached the "further instruments and assurances" provisions of paragraph 14 by "fail[ing] to give such assurances and instead [taking] action to try to change the parties' contract." Finally, she alleges husband breached the "no modifications" provisions of paragraph 18 by "alleg[ing] an Agreement effectively modified by the unexpressed intent of the parties regarding [wife's] duty to obtain employment, rather than accepting the provision of the Agreement indicating that no modification of the Agreement could be made except in writing

9

. . . ."

At length in her brief, wife applies various dictionary definitions, restatement of contracts principles and the holding of a Virginia Supreme Court case to establish that defective performance amounts to a "default" in performance. That principle, however, is inapposite. Husband's petition for a modification of support did not affect or effect performance under the PSA.

The PSA itself entitled husband to petition for a modification of support. Authorized by the PSA, husband's petition does not violate any of its terms. Furthermore, to the extent husband's petition was simply an attempt to impose a duty on wife not contemplated by the agreement, husband only alleged the duty; his performance under the agreement never changed. Indeed, there is no dispute concerning husband's continued payment of support. Finally, the paragraphs of the PSA upon which wife relies are inapposite to her claim. Paragraphs 12 and 18 require no performance of any kind. Paragraph 12 provides that the agreement represents the entire undertaking between the parties, and paragraph 18 provides that no oral modifications to the agreement shall be valid. While both provisions may demonstrate that wife was not bound to seek or obtain employment under the PSA, neither provision proscribes husband from suggesting otherwise. Furthermore, husband's petition bears no relation to the performance required by paragraph 14, <u>viz.</u>, that

10

husband provide further instruments and assurances to give full force and effect to the PSA, or the non-performance required by paragraph 12, _viz._, that husband not interfere or control wife.

In short, husband has not defaulted under the PSA and, thus, the PSA provides no authority for an award of attorney's fees to wife. Although wife prevailed in this case, the PSA does not provide for an award of attorney's fees to the prevailing party in an action arising under the PSA.

Wife's reliance on statutory authority to support her request for an award of attorney's fees is likewise misplaced. "Code § 20-109 bars a trial court from `directing the payment of . . . suit money or counsel fee[s] . . . except in accordance with th[e] [parties'] . . . contract.'" _Sanford v. Sanford_, 19 Va. App. 241, 249, 450 S.E.2d 185, 190 (1994). Here, as stated, the parties contracted not to provide the relief wife now seeks.

For the foregoing reasons, the judgment of the circuit court is affirmed.

_Affirmed._
