PRESENT: All the Justices

TM DELMARVA POWER, L.L.C., ET AL.

v.  Record No. 010024

NCP OF VIRGINIA, L.L.C.

OPINION BY
JUSTICE DONALD W. LEMONS
January 11, 2002

FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
Glen A. Tyler, Judge

In this interlocutory appeal, pursuant to Code § 8.01-581.016(1), we consider whether the trial court erred in denying a motion to compel arbitration.

I.  Facts and Proceedings Below

In October 1999, TM Delmarva Power, L.L.C. ("TMDP") and NCP of Virginia, L.L.C. ("NCP") entered into an operating agreement ("Agreement") to construct a power plant.  TMDP and NCP formed Commonwealth Chesapeake Company, L.L.C. ("CCC") to develop, construct, finance, own, and operate the power plant.  The Agreement includes Section 11.12, entitled "Dispute Resolution." Section 11.12(a) establishes procedures for dispute resolution by certain designated "Conciliators," and Section 11.12(b) provides for "Resolution by Arbitration."

A conflict arose regarding the propriety of capitalizing certain expenses and TMDP's right to hire a national accounting firm to serve as an accountant and auditor for CCC.  NCP initiated a conciliation procedure in accordance with Section 11.12(a) of the Agreement.  The conciliation procedure proved

unsuccessful and NCP filed a bill for declaratory judgment. TMDP subsequently filed a motion to compel arbitration and for stay, alleging that "Section 11.12 of the Operating Agreement contain[ed] a comprehensive and binding conciliation and arbitration procedure applicable to 'any material dispute, disagreement or controversy concerning this Agreement.' " NCP opposed the motion to compel, arguing that, "[a] mere agreement to submit to arbitration and no more does not constitute a condition precedent and will not prevent a party from maintaining an action in a court of law to enforce its rights under the contract." The trial court denied TMDP's motion to compel on the ground that the Agreement did not compel arbitration. TMDP appeals the adverse ruling of the trial court.

## II. Standard of Review

We are not bound by the trial court's construction of contract terms, but rather, "[w]e have an equal opportunity to consider the words within the four corners of the disputed provision." Wilson v. Holyfield, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984). Therefore, we consider the arbitration provision of the Agreement de novo.

## III. Analysis

TMDP argues that the trial court erred by failing to give effect to the plain meaning of the terms in the Agreement.

According to TMDP, the arbitration clause plainly means that the parties agreed to arbitrate their disputes upon the request of either party. NCP maintains that the word "may" in the arbitration provision renders the provision permissive, not mandatory; therefore, NCP contends that it reserved its right to pursue litigation despite TMDP's request for arbitration.

Contracts between parties are subject to basic rules of interpretation. Contracts are construed as written, without adding terms that were not included by the parties. Wilson, 227 Va. at 187, 313 S.E.2d at 398. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Bridgestone/Firestone v. Prince William Square Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995); Ross v. Craw, 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986). A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used. Id. at 212-13, 343 S.E.2d at 316. Furthermore, contracts must be considered as a whole "without giving emphasis to isolated terms." American Spirit Ins. Co. v Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001). Finally, no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract. D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995).

The clause in dispute, Section 11.12. <u>Dispute Resolution</u>, provides in pertinent part:

> (a) <u>Resolution by Conciliators</u>. If any material dispute, disagreement or controversy between the Parties arises with respect to this Agreement, and it cannot be settled by mutual accord, any Party may seek to have the dispute resolved in accordance with the following procedures:
>
>> (i) Either Party may refer the disagreement to the chief executive officer or equivalent of each of the Parties or to another executive. . . (the "Conciliators"). . . .
>>
>> (ii) The procedure for resolving such dispute shall in each instance be determined by the Conciliators. . .
>
> (b) <u>Resolution by Arbitration</u>. If any material dispute, disagreement or controversy concerning this Agreement is not settled in accordance with the procedures set forth in Section 11.1(ii)[sic]. . . then either Party may commence arbitration hereunder by delivering to the other Party a notice of arbitration.

In its entirety, Section 11.12 of the Agreement establishes a two-step mechanism that either party may employ for the resolution of disputes concerning the Agreement. In the present case, NCP invoked Section 11.12(a) when it initiated conciliation procedures. When the conciliation procedures proved unsuccessful, NCP filed suit and TMDP responded by invoking Section 11.12(b) concerning arbitration.

4

The language of Section 11.12 essentially constructs an "if – then" proposition -- if a party seeks conciliation and it is not successful, then either party may require arbitration. The word "may," as used in both Sections 11.12(a) and (b), means that either party may invoke the dispute resolution procedures, but neither is compelled to invoke the procedures. Once a party invokes the conciliation procedures[1], the other party is bound to participate. Likewise, once a party invokes the arbitration provision, the other party is bound to arbitrate.

In order to interpret the provision as requiring the consent of the non-initiating party before proceeding to arbitration, we would have to add the words "with the consent of the other party" following the phrase "either [p]arty may commence arbitration." However, our rules of contract interpretation do not permit the addition of words not included by the parties. Wilson, 227 Va. at 187, 313 S.E.2d at 398.

Furthermore, if we were to find the arbitration provision permissive, even when invoked by a party, the provision would be rendered meaningless and unnecessary because parties can choose to submit disagreements to arbitration without specific arbitration clauses. A wholly permissive arbitration provision would be meaningless, and we will not treat a contract provision

---

[1] The arbitration provision is at issue in the present case, therefore our discussion will be limited to that provision only.

as meaningless when a reasonable meaning can be given to it. D.C. McClain, Inc., 249 Va. at 135, 452 S.E.2d at 662.

NCP argues that the use of the word "may" renders the arbitration clause permissive; therefore, NCP argues, neither party is bound to submit disputes to arbitration but can pursue litigation if it chooses. NCP's interpretation of the clause puts too much emphasis on an isolated word and ignores the context in which the word is used. American Spirit, 261 Va. at 275, 541 S.E.2d at 555. As we stated in Pettus v. Hendricks, 113 Va. 326, 330, 74 S.E. 191, 193 (1912), while the word "shall" is primarily mandatory in effect, and "may" is primarily permissive in effect, "courts, in endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, will construe 'may' and 'shall' as permissive or mandatory in accordance with the subject matter and context."

Here, the word "may" is permissive, but it clearly means that either party has the discretion to choose arbitration if conciliation is not successful. However, once this discretion is exercised, arbitration is compelled under the agreement.

Numerous decisions from other jurisdictions support our interpretation of the dispute resolution clause in this case. State courts in Maine[2], Kentucky, and California[3] have

---

[2] See Orthopedic Physical Therapy Ctr., P.A. v. Sports Therapy Ctrs., Ltd., 621 A.2d 402 (Me. 1993) (finding

6

interpreted similar dispute resolution clauses to mean that arbitration is mandatory once initiated by a party. For example, the Supreme Court of Kentucky interpreted a similar provision that stated, "[a]ll claims, disputes and other matters . . . arising out of, or relating to, the [contract]. . . may be decided by arbitration." City of Louisa v. Newland, 705 S.W.2d 916, 917 (Ky. 1986). The court held that the use of the word "may" in the arbitration provision made arbitration compulsory "once either party demand[ed] it," and found the contract mutually binding on both parties. Id. at 919.

Several federal decisions also support this interpretation of the arbitration provision. For example, the United States Court of Appeals for the Fourth Circuit examined an arbitration provision that stated, "[i]f any misunderstanding or dispute arises . . . such misunderstanding or dispute may be submitted to arbitration." United States v. Bankers Ins. Co., 245 F.3d 315, 318 (4th Cir. 2001). The court held that the "use of permissive phraseology is not dispositive." Id. at 320. Accordingly, the court found that the clause had the effect of

arbitration mandatory when requested by a party under the arbitration clause that stated "disputes. . . may be settled by arbitration.")

[3] See Service Employees Int'l Union, Local 18, AFL-CIO v. American Bldg. Maint. Co., 29 Cal. App. 3d 356 (1972) (holding that a provision which stated "the issue in dispute may be submitted to an impartial arbitrator" gave an employee a right

7

giving the aggrieved party the choice "between arbitration and abandonment of his claim."  Id. at 321.

The United States Court of Appeals for the Eighth Circuit[4] similarly found that an agreement providing that disputes or disagreements "may be submitted to arbitration" reflected that the parties intended arbitration to be mandatory.  American Italian Pasta Co. v. The Austin Co., 914 F.2d 1103 (8th Cir. 1990).  The court held that there would be no reason for the arbitration language if the parties intended arbitration to be permissive because parties can always voluntarily agree to submit to arbitration even in the absence of an arbitration provision.  Id. at 1104.

Finally, the public policy of Virginia favors arbitration. Virginia adopted the Uniform Arbitration Act in 1986, and the Code states in pertinent part that "[a] written agreement . . . to submit to arbitration any controversy . . . arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of

---

to have the issue submitted to arbitration, regardless of the use of the word "may.")

[4] The United States Court of Appeals for the Eighth Circuit had occasion to interpret another similar arbitration provision in Bonnot v. Congress of Indep. Unions Local #14, 331 F.2d 355 (8th Cir. 1964).  The collective bargaining agreement in Bonnot stated that "either party may request arbitration."  Id. at 356. The court held that the word "may" in the clause did not render the clause permissive, but instead gave an aggrieved party the

any contract." Code § 8.01-581.01. This language illustrates Virginia's public policy in favor of arbitration and the validity of arbitration agreements. In light of Virginia's public policy and the plain language of the Agreement, we hold that the arbitration provision in the present case provides for mandatory arbitration once arbitration is requested by either party.

Accordingly, we will reverse the judgment of the trial court, and remand with instructions to enter an order compelling arbitration.

<u>Reversed and remanded.</u>

JUSTICE LACY, with whom JUSTICE HASSELL and JUSTICE KOONTZ join, dissenting.

I respectfully dissent from the majority's opinion in this case.

This case presents an issue of first impression for the Supreme Court of Virginia: whether contractual language permitting one party to pursue arbitration constitutes the parties' written agreement to arbitrate their disputes upon the election of either party.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has

choice between arbitration or abandonment of their claim. <u>Id.</u> at 359.

9

not agreed so to submit."  AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986); see also Doyle & Russell, Inc. v. Roanoke Hosp. Ass'n, 213 Va. 489, 494, 193 S.E.2d 662, 666 (1973).  The contract in the present case contains no language that clearly demonstrates the parties' agreement that invocation of arbitration by one party would bind the other party to an arbitration proceeding.  The contract states only that, "either Party may commence arbitration hereunder by delivering to the other Party a notice of arbitration."  Because of the ambiguity in this contract, general rules of contract interpretation must be used to determine whether the parties had an agreement to arbitrate. See United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001).

The majority's conclusion that permissive language must be construed as mandatory is based on the rationale that to do otherwise would render the arbitration clause meaningless. However, the cases upon which the majority relies, Bankers Insurance Company, 245 F.3d 315 (4th Cir. 2001); American Italian Pasta Company v. The Austin Company, 914 F.2d 1103 (8th Cir. 1990); Bonnot v. Congress of Independent Unions Local #14, 331 F.2d 355 (8th Cir. 1964); Service Employees International Union, Local 18 v. American Building Maintenance Company, 29 Cal. App. 3d 356 (1972); City of Louisa v. Newland, 705 S.W.2d

10

916 (Ky. 1986); and Orthopedic Physical Therapy Center v. Sports Therapy Centers, 621 A.2d 402 (Me. 1993), do not support the use of this rationale in the context of this case.

Bonnot and Service Employees were labor cases in which the arbitration clauses at issue were part of collective bargaining agreements, which required the parties to exhaust the grievance procedures provided in the agreements before pursuing litigation.  The language of the contracts was permissive and allowed either party to elect arbitration.  In these cases, the courts held that the term "may" was intended to give the parties the choice of arbitrating their complaints or abandoning them. Because the parties had no options outside of the agreements until they exhausted all grievance procedures within the agreement, their choice of arbitration would be meaningless unless their election of arbitration mandated the participation of the other parties.  Bonnot, 331 F.2d at 359; Service Employees, 29 Cal. App. 3d at 360; see also Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875 (4th Cir. 1996). American Italian Pasta Co. did not involve a collective bargaining agreement but applied Bonnot in a non-labor context where the language of the contract limited the parties' right to pursue legal action until after the parties pursued dispute resolution procedures prescribed by the contract.

Thus in these cases, the arbitration clauses were part of agreements which required compliance with dispute resolution processes before recourse to the courts.  If a party could refuse a request for arbitration by the other party, the requesting party would be forced to abandon its claim because under the agreement judicial relief could not be invoked without exhaustion of the resolution procedures, including arbitration.

In the instant case, however, the parties were not subject to a collective bargaining agreement or any other separate agreement or clause requiring that that dispute resolution mechanisms be exhausted prior to litigation.  Nothing in the terms of the contract limited the options of the parties such that failure of one party to participate in either conciliation or arbitration would leave the complaining party without a remedy.  The contract, as written, made two dispute resolution options available to an aggrieved party and did not limit any party's access to the courts.  Therefore, unlike the Bonnot line of cases, the arbitration option does not have to be mandatory to make a party's choice of that option meaningful.  Cf. State of the Arts, Inc. v. Congress Property Management Corp., 688 A.2d 926, 928 (Me. 1997).

The second argument made by this line of cases is that the parties could have voluntarily agreed to arbitration at any time, and, therefore, the inclusion of an arbitration clause

12

would be meaningless unless it was intended to express the parties' agreement to arbitrate. Bankers Ins. Co., 245 F.3d at 321; American Italian Pasta Co., 914 F.2d at 1104; City of Louisa, 705 S.W.2d at 919; Orthopedic Physical Therapy Ctr., 621 A.2d at 403.

The arbitration clause in Bankers Insurance Company was a stand-alone clause that did not introduce any procedures for arbitration, but merely stated that any "misunderstanding or dispute may be submitted to arbitration." 245 F.3d at 318. Unlike the clause at issue in this case, that clause would have been purposeless if it were not an expression of the parties' agreement to arbitrate.

The arbitration clause in City of Louisa would not only have been meaningless if it did not mandate the participation of both parties at either party's election of arbitration, it also would have been contrary to language in the remainder of the arbitration clause. The agreement at issue in City of Louisa stated that, "all claims, disputes and other matters . . . may be decided by arbitration." 705 S.W.2d at 917. The sentences following specifically refer to "[t]his agreement to arbitrate" and to the "demand for arbitration" that the electing party files with the other party. Id. Read in context, the permissive arbitration language was followed by language that made clear the parties' agreement to arbitrate and that either

13

party may "demand" the other's participation in arbitration. By contrast, the arbitration clause at issue in the present case includes the phrase "notice of arbitration shall specify the matters *as to which arbitration is sought*." (emphasis added) Contrary to the language in City of Louisa, a party in this case does not have the right to demand arbitration, but may only seek to have arbitration. The non-compulsory nature of the phrase "*to which arbitration is sought*," when contrasted with the language from City of Louisa is even more evidence that the dispute resolution provision in the present case does not include an agreement to arbitrate.

As discussed above, American Italian Pasta Company relies on the reasoning of the Bonnot case for its holding and only secondarily includes the statement that the arbitration clause would be meaningless if it were not mandatory because the parties could agree to arbitrate in the absence of such a clause. 914 F.2d at 1104. But while both American Italian Pasta Co. and Orthopedic Physical Therapy Ctr. recite this principle, they do no more than state it and fail to explain its application to the circumstances of those cases. Therefore, they have little precedential value.

As NCP points out, this Court has held that "words are not meaningless merely because they impose no legal obligation. Parties frequently include precatory language in agreements

. . . to express a sentiment, wish, or desire with regard to the parties' future course of conduct." Ross v. Craw, 231 Va. 206, 214-15 (1986). The majority recognizes that "the word 'may' is permissive, but it clearly means that either party has the discretion to choose arbitration if conciliation is not successful." This is the plain meaning of the subject clause and it does not become meaningless simply because it does not create a legal obligation for the other party to participate in arbitration. Instead, it has meaning because it introduces the option of arbitration as a means of dispute resolution and the remainder of § 11.12 of the contract, which mandates the procedures that the parties must follow if arbitration is pursued.

Finally, the majority relies upon a public policy in favor of arbitration. Public policy in Virginia is by no means against arbitration, but the cases both in Virginia and in other jurisdictions that discuss the presumption in favor of arbitration do so in terms of the scope of arbitration agreements, not the existence of such agreements. The presumption is applied when a court is trying to determine whether the conflict at issue is within the scope of an already established agreement to arbitrate. The presumption in favor of arbitrability arises only after a determination has been made that the parties agreed to arbitrate. First Options of Chicago,

Inc. v. Kaplan, 514 U.S. 938, 945-46 (1995); Bell Atlantic Corporation v. CTC Communications Corp., 1998 Va. LEXIS 20160 (2nd Cir. 1998); Bonnot, 331 F.2d at 359. The present case calls upon this Court to determine whether there is an agreement to arbitrate, not whether an issue falls within the scope of that agreement. Therefore, the presumption in favor of arbitrability does not apply.

Instead, legal precedent relevant to these determinations discusses the importance of a party's "right to a court's decision about the merits of its dispute," a right that is relinquished by an agreement to arbitrate. First Options of Chicago, 514 U.S. at 942; cf. Waterfront Marine Construction, Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B and C, 251 Va. 417, 426-27, 468 S.E.2d 894, 899 (1996). It is this principle, that all parties have an important right to judicial resolution of their conflicts, that should serve as a guide when interpreting the language of a contract.

For these reasons, I believe that the cases relied upon by the majority do not support the holding that TMDP and NCP had an agreement to arbitrate. Rather, I conclude that the arbitration clause is meaningful without mandating arbitration because it introduces a dispute resolution option and the procedures to be followed if the parties elect arbitration and, applying the principle that parties have a right to judicial resolution of

16

their conflicts, an agreement to arbitrate must be clearly understood from the terms of the contract.  Finding no such agreement in this contract, I would affirm the judgment of the trial court.