COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, O'Brien and AtLee
Argued at Fredericksburg, Virginia


ROBERT L. AYERS

                                               MEMORANDUM OPINION[*] BY

v.      Record No. 0068-18-4            JUDGE RICHARD Y. ATLEE, JR.
                                               OCTOBER 2, 2018

LINDA T. AYERS


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stephen C. Shannon, Judge

Phillip B. Leiser (The Leiser Law Firm, on brief), for appellant.

Jenna M. Maresco (Curran Moher Weis, P.C., on brief), for
appellee.


Robert Ayers ("husband") appeals the decision of the Circuit Court of Fairfax County

regarding the division of assets following his divorce from Linda Ayers ("wife").[1]  On appeal,

husband argues that the circuit court erred by allocating the closing costs from the sale of the

marital home in accordance with the equitable shares of the proceeds rather than treating them as

a joint debt.  For the reasons that follow, we disagree and affirm the circuit court.

## I. BACKGROUND

"Upon review, we consider the evidence in the light most favorable to the wife, the

prevailing party."  Gray v. Gray, 228 Va. 696, 699, 324 S.E.2d 677, 679 (1985).  Prior to

marriage, the parties entered into a premarital agreement.  Among other things, the premarital

agreement addresses the property and debts of the parties.  Paragraph 10 states,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We recognize that "former husband" and "former wife" would be more accurate, but we
use less cumbersome titles in this memorandum opinion for ease of reference.

The parties also agree that the manner in which such property is titled during the marriage, including its placement in accounts in sole or joint names, shall control such property's classification as joint or separate, its ownership, and its distribution in the event of divorce, dissolution of marriage, or separation. If Separate Property is used for the purchase of a home that both parties live in, the new home will be Joint Property, which would be equally divided under this Agreement in the event of divorce.

Additionally, the premarital agreement provides that joint or marital debts are to be divided equally between the parties.

Once married, the parties decided to sell husband's separate property to purchase a new marital home to be titled jointly. In order to avoid husband losing his separate property interest as provided in the premarital agreement, the parties entered into a second agreement (the "marital agreement"). The purpose of the marital agreement was to allow the parties to jointly title the home and "allow for a percentage of the new home to be determined as separate property." Where one party contributed separate property in partial purchase of a new marital home, the marital agreement states that "the amount of any such payment will be a separate-property interest in the asset, which will be a percentage of the asset's value, equal to the percentage of the asset's original purchase price that the payment represents."

The parties purchased the marital home for $1,189,000. Husband contributed $272,351.75 of his separate property. After husband's contribution and a credit from the sellers, the parties jointly obtained a mortgage for the remaining $915,000.

Upon their separation, the parties sold the marital home and entered into a marital settlement agreement. In relevant part, the marital settlement agreement provides,

> The parties have sold the marital home . . . . The net proceeds of sale were $263,741.06. . . . The parties disagree as to how these proceeds should have been divided, however they do agree that they must be divided in accordance with their Premarital Agreement . . . and their Marital Agreement . . . . The parties expressly leave unresolved the issue of how these sale proceeds

- 2 -

shall be divided for later resolution or court determination if the
parties cannot agree on a resolution.

Paragraph 8(A) also states that "[t]he parties are not jointly obligated to pay any debts."

The parties sold the marital home for $1,130,000, and they paid the remaining balance of the mortgage from the sale proceeds. At closing, the parties were responsible for $71,603.79 in closing costs. The proceeds after the mortgage balance and closing costs had been deducted were $263,741.06. The parties agree that husband was entitled to 69.27% as his separate share and 15.365% as his portion of the marital share, for a total of 84.635%. Wife's marital share was 15.365%. The parties disagreed as to how the closing costs should be allocated. Husband argued the closing costs should be treated as joint debts and evenly divided between the parties.

The circuit court rejected husband's argument and determined that under the three agreements (collectively "the agreements"), the asset's value, or the amount to be allocated between the parties, equals the amount after all of the costs (both mortgage and closing) are deducted from the sale price. As such, the asset's value was $263,741.06. Husband's total share was $223,217.24, and wife's total share was $40,523.82. Husband filed this appeal.

## II. ANALYSIS[2]

Marital agreements and property settlement agreements are contracts; "therefore, we must apply the same rules of interpretation applicable to contracts generally." Smith v. Smith, 15 Va. App. 371, 374, 423 S.E.2d 851, 853 (1992) (quoting Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)). "[W]e review de novo the purely legal issues of what the terms

---

[2] Husband cites no case law or authority in the argument section of his brief. Pursuant to Rule 5A:20(e), briefs must contain principles of law, argument, and the authorities related to each assignment of error. But see Wilson v. Commonwealth, 54 Va. App. 631, 638-39, 681 S.E.2d 74, 78 (2009) (noting in cases of first impression that appellants are not required to "cite to cases where no precedent exists or to cite a set number of cases or code sections"). Therefore, we will address husband's arguments on the merits. However, we also note that under Wilson, parties should cite to "any informative or illustrative cases." Id. at 638, 681 S.E.2d at 78.

of a contract are . . . ." Spectra-4, LLP v. Uniwest Commercial Realty, Inc., 290 Va. 36, 43, 772 S.E.2d 290, 293 (2015).

A court must construe a contract according to the intent of the parties "*as expressed by them in the words they have used.*" Flippo v. CSC Assocs. III, 262 Va. 48, 64, 547 S.E.2d 216, 226 (2001) (quoting Ames v. Am. Nat'l Bank, 163 Va. 1, 38, 176 S.E. 204, 216 (1934)). "[C]ontracts must be construed as written." Ross v. Craw, 231 Va. 206, 213, 343 S.E.2d 312, 316 (1986). "[C]ontract language will not be treated as meaningless where it can be given a reasonable meaning. Parties are not presumed to have included a provision of no effect." Id. at 214, 343 S.E.2d at 317 (internal citations omitted). "Courts cannot read into contracts language which will add to or take away from the meaning of words already contained therein." Bergman v. Bergman, 25 Va. App. 204, 214, 487 S.E.2d 264, 269 (1997) (quoting Henderlite v. Henderlite, 3 Va. App. 539, 541, 351 S.E.2d 913, 914 (1986)). Additionally, "the omission of a particular term from a contract is evidence that the parties intended to exclude that term." Pocahontas Mining LLC v. CNX Gas Co., 276 Va. 346, 353, 666 S.E.2d 527, 531 (2008).

The parties' agreements do not expressly set out how closing costs should be allocated between the parties upon the sale of the marital asset.[3] Husband argues that the closing costs should be treated as a joint debt and divided equally between the parties. But husband is asking this Court to adopt an interpretation inconsistent with the express language of the agreements. The agreements do not define closing costs as a debt, nor do they provide a definition of debt.[4]

---

[3] The only reference to closing costs is in section 3 of the marital agreement. That provision only deals with using separate property to pay the closing costs in acquiring a jointly titled marital asset. It does not deal with closing costs on the sale of the marital asset.

[4] Paragraph 14 in the premarital agreement contains the only explanation of debt. It states, "Debts include but are not limited to car loans, credit card debts, student loans, mortgages, etc."

- 4 -

Husband simply assumes that closing costs are debts without citing any authority for the proposition.

Paragraph 8(A) of the marital settlement agreement, entered into after the residence was sold, specifically provides, "The parties are not jointly obligated to pay any debts." Moreover, the marital settlement agreement sets out $263,741.06 as the sale proceeds and reserved the "issue of how these sale proceeds shall be divided." It contains no reservation of the issue of allocating closing costs, which had already been paid.[5] Thus, the language used in the marital settlement agreement specifically demonstrates, first, that the parties agreed that no joint debts existed, and second, the parties' intent to treat the closing costs as something other than a joint debt.

Husband asks this Court to interpret the agreements in a way that renders paragraph 8(A) meaningless and to read in a definition of debt that is not present. Husband's argument directly contradicts the express terms of the agreements, and he provides the Court with no case law or other authority to interpret the contract in accordance with his argument.

### III.  CONCLUSION

The circuit court's interpretation of the "asset's value" as referring to the proceeds from the sale after all of the costs have been deducted is consistent with the language in the agreements. Therefore, we cannot say the circuit court erred in allocating the closing costs as it did. The trial court is affirmed.

<u>Affirmed.</u>

---

[5] Even were we to assume that the closing costs were a joint debt, we fail to see how they were treated any differently than the mortgage costs, which were a joint debt. Both mortgage and closing costs were deducted from the total sale price before the remaining proceeds were divided between the parties.