# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## PETTUS v. HENDRICKS AND OTHERS.

### AND

## HOWARD v. FIREMEN'S RELIEF ASSOCIATION AND OTHERS.

### March 14, 1912.

1. INSURANCE—*Benefit Societies—Charter—By-Laws.*—Where the charter of a benefit society provides that the association will "pay to the nearest relative, or such other dependent as may be designated by the member according to its by-laws, such sum of money upon the death of such member as said by-laws shall provide," the phrase "according to its by-laws" is merely intended to reserve to the association the right to prescribe a method of designation if it should see fit to do so, and the charter is, in this respect, self-executing.

2. INSURANCE—*Benefit Societies—Beneficiary—Enlarging Class—Statutes.*— Where the charter of a benefit society designates the classes of persons who may be beneficiaries, and a subsequent statute designates a larger class of persons who may be made beneficiaries of benefit associations, the statute is not intended to alter, modify, or repeal the charter, but merely to enumerate the objects for which a benefit association may be organized.

3. CONSTRUCTION OF WRITTEN INSTRUMENTS—*"Shall"—"May."*—While the word "shall" may primarily be mandatory in its effect, and the word "may" primarily permissive, yet the courts, in endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, will construe "may" and "shall" as permissive or mandatory in accordance with the subject matter and context.

4. INSURANCE — *Benefit Societies — Beneficiary — Ineffectual Attempt to Change.*—If a beneficiary of a certificate in a benefit society has been lawfully designated, but subsequently a change is sought to be made in the beneficiary, if for any reason the change is invalid, the rights of the first beneficiary remain in force.

5. INTERPLEADER—*Costs—Counsel Fees—Fees to Guardian Ad Litem.*— Where an interpleader bill is filed in good faith the complainant should have his costs, including attorney's fees, in the first instance out of the funds brought by him into court, which costs should eventually be paid by the losing claimant of the fund. So also, if infants are

necessary parties to the suit, and they have no estate which the court can reach, the fee to their guardian *ad litem* is a proper charge in the first instance upon the fund to be administered.

Appeal from a decree of the Chancery Court of the city of Richmond. The fund in controversy in this cause was claimed by three different claimants in different rights. It was claimed by the beneficiary named in the certificate, by the affianced wife of the assured, and by the heirs and next of kin of the assured. Under these circumstances the Firemen's Relief Association filed its bill of interpleader, brought the money into court, set out the conflicting claims of the parties, and asked the court to determine the rights of the parties. The trial court decided that the fund belonged to the beneficiary named in the certificate, and from that decree the other claimants, respectively, applied for and obtained appeals.

*Affirmed.*

The opinion states the case.

*Robert M. Jeffress* and *William W. Crump*, for Lelia B. Pettus.

*Ordway Puller* and *C. R. Sands*, for C. L. Howard.

*John A. Lamb, Brockenbrough Lamb*, and *Bev. T. Crump*, for Ella Hendricks, appellee.

KEITH, P., delivered the opinion of the court.

Charles A. Burbank was, at the time of his death, in February, 1909, a member in good standing in the Firemen's Relief Association. A certificate in which the society agreed to pay $1,000 to Ella Hendricks upon Burbank's death was issued to the deceased, and was by him delivered to her, she being his first cousin, and one of his nearest relatives. On October 6, 1908, Burbank requested the Association, in writing, that Mrs. Lelia B. Pettus be named as his beneficiary. The minutes of the Association on this subject read as follows: "His request was sent back to have his certificate attached, before a new one could be issued."

Mrs. Pettus was not a relative of Burbank, nor was she in any

manner dependent upon him, but it seems that there was an engagement of marriage between them. Burbank, it appears, knew that the Association did not act upon his request to change his beneficiary, and there is conflict of evidence as to whether he requested Ella Hendricks to return the certificate to him which had been issued to her. The minutes of the Association show no other mention of the attempted change of beneficiary between October 6, 1908, and the death of Burbank.

Upon the death of Burbank, Ella Hendricks, Lelia B. Pettus, and other relatives and heirs at law of the deceased claimed the $1,000; whereupon the Association filed its bill of interpleader in the Chancery Court of the city of Richmond, and, upon the deposit of the sum of $1,000, was discharged from further liability; and upon the pleadings and proofs the chancery court decreed in favor of Ella Hendricks, the original beneficiary, and from that decree Lelia B. Pettus, in her own behalf, and C. L. Howard, representing the heirs at law, both appealed.

The by-laws of the Association do not regulate the manner in which a change of beneficiary of a benefit certificate shall be made. The charter of the Association was granted by the Circuit Court of the city of Richmond on December 7, 1898, and, among other things, provides that the Association will "pay to the nearest relative, or such other dependent as may be designated by the member according to its by-laws, such sum of money upon the death of such member as said by-laws shall provide." The phrase "according to its by-laws" is merely intended to reserve to the Association the right to prescribe a method of designation if it should see fit to do so, and the charter is, in this respect, self-executing.

The beneficiary was designated, and the certificate was issued in this case on a printed form, in accordance with the uniform custom of the Association.

The claim of the appellee, Ella Hendricks, is that she was regularly designated as the beneficiary upon the issuance of the certificate, and the certificate placed in her keeping; that she comes within the designated class, being amongst the nearest relatives of the deceased, and that, no other person capable of being chosen by the terms of the charter having been designated, she is entitled to the fund in question.

By an act approved March 3, 1898, (Acts 1897–8, p. 734,) it was provided, among other things, that "payment of death benefits shall be to families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon the member, as may be designated by the member."

This act was repealed by an act of March 14, 1904, but the provisions affecting this case were re-enacted by an act approved March 9, 1906, and are to be found in Pollard's Supplement to the Code, 1910, at p. 619, where it is provided that "payment of death benefits shall be to families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon the member, as may be designated by the member, or to such other beneficiaries as may be permitted by the laws of the State or province in which such order or association is chartered.

"Each member shall have the right to designate his beneficiary, and from time to time have the same changed in accordance with the by-laws, rules, or regulations of the order or association, and no beneficiary shall have any vested interest in the said benefit until the same has become due and payable upon the death of the member."

The designation of Mrs. Hendricks as the beneficiary seems to have been made in 1903, upon the death of Burbank's mother. The claim of Mrs. Pettus, therefore, rests upon the proposition that the designation of Mrs. Hendricks had been revoked, that she had been named in her stead, and that, while not a relative or a dependent upon Burbank, she was his affianced wife, and came directly within the terms of the statute above quoted, and was, therefore, in one of the classes from which the beneficiary might lawfully be chosen.

On behalf of the heirs at law, the contention is that the letter from Burbank expressing his desire to recall the designation of Mrs. Hendricks, and to make Mrs. Pettus his beneficiary, was sufficient to destroy the rights of the former without conferring any upon the latter. We have no doubt, however, that this position cannot be maintained, and that the fund should be paid either to Mrs. Pettus or to Mrs. Hendricks.

The chancery court was of opinion that Mrs. Hendricks having been lawfully designated, and being among the classes capable

42

of taking under the terms of the charter, she had the better right, and that her claim should be preferred to that of Mrs. Pettus, who was not among any of the classes designated by the charter as capable of receiving the benefit fund; that the law, in providing a larger class of persons capable of being designated than that found in the charter, was not intended to alter, modify, or repeal the charter, but merely to enumerate the objects for which a benefit association could be organized; and this we think is the true construction. It is true that the statute, in declaring who may be beneficiaries, uses the word "shall," but while that word may primarily be mandatory in its effect, and the word "may" primarily permissive, yet the courts, in endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, will construe "may" and "shall" as permissive or mandatory in accordance with the subject matter and context. See Words and Phrases, "Shall."

Having reached the conclusion that Mrs. Pettus could not lawfully be designated as a beneficiary, because not among the classes for whose benefit the Association was organized, the court was of opinion that her designation was ineffectual for all purposes; that, for the reasons already stated, it conferred no right upon her, and that the original designation of Mrs. Hendricks remained in force.

In Bacon on Benefit Societies, sec. 310c, the law is stated as follows: "The question occurs as to the effect on the rights of the beneficiaries first designated by an attempted change of beneficiary which is incomplete, or where the change, being effected by compliance with the required formalities and the issuance of a new certificate, is illegal because the second beneficiaries are not entitled to take. While it seems to be taken for granted in the cases cited in the preceding sections that if the attempted change of beneficiary is not complete the rights of the first beneficiaries are not affected, because the revocation is not made complete by the issuance of the new certificate, it is now settled that, if for any reason the change of beneficiaries is invalid, the rights of the first beneficiary remain in force." Citing a number of authorities.

See also *Grace* v. *N. W. Mut. Relief Association*, 87 Wis. 562, 58 N. W. 1041, 41 Am. St. Rep. 62; *Sturges* v. *Sturges*, 126 Ky.

80, 102 S. W. 884, 12 L. R. A. (N. S.) 1014; *Elsey* v. *Odd Fellows Mut. Relief Asso.,* 142 Mass. 224, 7 N. E. 844.

We are of opinion, therefore, upon this branch of the case, that Mrs. Pettus was not among the classes enumerated in the charter as capable of becoming beneficiaries, and, for the reasons already given, the statute upon the subject of benefit associations does not serve to add to the classes enumerated; that the attempted designation of Mrs. Pettus being ineffectual, the right of Mrs. Hendricks was thereby unimpaired.

A question is raised as to costs, with respect to which the judge of the chancery court, in his opinion, says: "The general costs will be charged against the active and losing claimants thus: One-half to Lelia B. Pettus and the other half jointly to Minnie Engleking and the five others who joined with her in an answer and cross-bill. In the general costs are included the fee of $50.00 allowed to the plaintiff's counsel, the $25.00 to be paid out of the fund to the guardian *ad litem,* the costs of Ella Hendricks' depositions, and the clerk's and sheriff's fees likewise to be paid out of the fund."

With respect to the costs exclusive of the fee to the plaintiff's attorney and to the guardian *ad litem,* no further authority is needed than that of *Beers, &c.* v. *Spooner,* 9 Leigh (36 Va.) 153, and it will appear from the cases cited with respect to those fees that that case is in harmony with the general current of opinion upon the subject of costs in interpleader cases.

This suit was brought in unquestioned good faith. There were, as we have seen, three sets of claimants to the fund for which the Firemen's Association confessed its liability. In order to have the controversy so determined that it might safely pay over the fund, this suit was brought, and the guardian *ad litem* of the infants made a party defendant. The litigation was not rendered necessary by any default on the part of the Firemen's Association, but by the conflicting claims of the parties defendant. If the infant defendants had had any estate which could have been made responsible for the costs, the fee to the guardian *ad litem* would have been properly charged upon it; but the presence of the wards in court, by guardian *ad litem,* being necessary, and they having no estate which the court could reach, the fee became a proper charge in the first instance upon the fund to be administered.

The same is true with respect to counsel fee allowed to the plaintiff.

See 2 Daniel's Ch. Pr. (5th Ed.), 1570; Pomeroy's Eq. Rem. sec. 59; *Swiger* v. *Hayman*, 56 W. Va. 123, 48 S. E. 839, 107 Am. St. Rep. 899; *Miller* v. *Watts*, 4 Duer (N. Y.) 203.

In *Canfield* v. *Morgan*, 1 Hopkins Ch. (N. Y.) 222, it is said that the stakeholder in a proper case is to have his costs out of the fund, which costs are eventually to fall on the party who fails.

As was said by the learned judge of the chancery court, "The payment of the plaintiff's costs out of the fund settles no question except that the plaintiff is entitled in any event to his costs; and the question as to what party is to be eventually charged with these costs is reserved to the final hearing, when 'the saddle is put on the right horse,' that is, on the losing claimant of the fund."

In *Woodmen of the World* v. *Wood*, 100 Mo. App. 655, 75 S. W. 377, the court allowed to the interpleader its costs, including $100 as attorney's fee, all to be paid out of the fund. The court said: "We think the court acted within the rule in making such allowance. That rule is that when the plaintiff in the interplea has acted in good faith, and has grounds upon which to base his call for the interposition of a court of equity, requiring the adverse claimants to interplead, he is entitled to his costs out of the fund in his hands or which he may pay into the court. And these costs may include an attorney's fee."

Upon the whole case we are of opinion that the decree of the chancery court should be affirmed.

*Affirmed.*