## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Kurt G. Schlegel

v.

Bank of America, N.A.

v.

Christopher C. Grieb

Case No. (Chancery) 02-180

BY JUDGE EDWARD L. HOGSHIRE

March 1, 2005

The pivotal issue before the Court, to be addressed herein below, are cross-motions for summary judgment filed by Complainant, Kurt G. Schlegel, and Respondent, Bank of America, N.A. Complainant avers that he is entitled to judgment against the Respondent Bank because the undisputed facts demonstrate that Respondent's actions constitute conversion. Respondent asserts that it is entitled to summary judgment on the grounds that all common law claims should be dismissed as a matter of law and that the Complainant has received the sole relief to which he is entitled under Va. Code § 8.4A-204. Respondent further contends that it is entitled to attorneys' fees pursuant to Va. Code § 8.01-364 and its cross-bill for interpleader. Cross-bill Respondent, Christopher C. Grieb, also moved for summary judgment against Cross-bill Complainant Bank. Based on the following reasons, Complainant Kurt G. Schlegel's Cross-Motion for Summary Judgment is denied. Cross-bill Respondent Grieb's Motion for Summary Judgment is denied, and Respondent Bank of America, N.A.'s Motion for Summary judgment is granted.

*Statement of Facts*

Complainant Kurt G. Schlegel and Christopher C. Grieb created Piedmont Building and Developing Corporation ("Piedmont") in 1998. They were the only two shareholders, and each owned 50% of the stock in Piedmont. *See* Defendant Christopher C. Grieb's Responses to Defendant Bank of America's First Request for Admission, hereinafter "Grieb's Responses," at 4, 28. In 1999, Schlegel opened account # 004112985556 ("Piedmont Account"), a corporate checking account, with Bank of America on behalf of Piedmont. Bill of Complaint ("BOC") at ¶ 2.

The signature card authorizing access to the account lists Schlegel as the only party so authorized. BOC at ¶ 3. However, according to the corporate resolution establishing the account, the President and the Chief Executive Officer ("CEO") of the corporation are empowered to make transactions affecting the corporate account. BOC at ¶ 3. Schlegel has served as Piedmont's president since its incorporation in 1998. BOC at ¶ 3. Although Schlegel contends that the corporation has never had a CEO, he concedes that a Piedmont corporate resolution authorized and empowered Grieb to act on Piedmont's behalf with respect to banking affairs and that this authority was never expressly revoked. *See* Plaintiff Kurt G. Schlegel's Responses and Objections to Defendant Bank of America's First Request for Admission, hereinafter "Plaintiff's Responses," at 43-45. Grieb also asserts that he was CEO of Piedmont. See Christopher C. Grieb's Answer to Cross-Bill by Bank of America, N.A.

As of November 2001, Schlegel and Grieb were in a dispute over ownership and control over Piedmont. *See* Plaintiff's Responses at 91-93; Grieb's Responses at 26. In early November 2001, Schlegel sold Piedmont property without informing Grieb and deposited the proceeds of the sale in the Piedmont Account. *See* Grieb's Responses at 13-15. On or about November 13, 2001, Grieb initiated two payment orders against the account, transferring $65,655.48 from the account to his personal account, also held with Bank of America. BOC at ¶ 5. The Bank transferred this money to Grieb's account. *See* Plaintiff's Responses at 66.

Schlegel did not attempt to notify the Bank that Grieb was no longer authorized to make business transactions on behalf of Piedmont prior to this transfer of funds. *See* Plaintiff's Responses at 55. However, after the transfer of funds, Schlegel notified Bank of America orally and in writing that the payment orders issued by Grieb were unauthorized because Grieb was not authorized by Piedmont to transfer the funds and that Grieb was no longer affiliated with Piedmont. BOC at ¶ 6. In response to this complaint and pursuant to standard policy, the Bank placed a "hard hold" on the proceeds from those payment orders

on November 19, 2001. BOC at ¶ 7. As a result of this action, neither Schlegel nor Grieb had access to those funds. BOC at ¶ 12-15.

In February 2002, Grieb filed a lawsuit against Schlegel, alleging that he and Schlegel were deadlocked as directors of Piedmont. *See Grieb v. Schlegel and Piedmont Building & Devel. Corp.*, Chancery No. 2-13. Ultimately, Grieb and Schlegel reached an agreement under which each was legally entitled to 50% of the funds held by Bank of America. *See* Plaintiff's Responses at 95. Bank of America offered to distribute the funds in accordance with this agreement, provided the Bank could recover a portion of its attorneys' fees and be dismissed from further liability. No agreement was reached.

## Procedural History

On December 12, 2002, Schlegel, acting *pro se*, filed a Bill of Complaint in the Circuit Court for the City of Charlottesville against Bank of America, alleging conversion, breach of contract, and a violation of Va. Code § 8.4A-204 for an unauthorized transfer under the Virginia Wire Transfer Act. He filed an amended complaint on January 22, 2003.

On January 8, 2003, Bank of America filed a Cross-Bill for Interpleader and a Cross-bill against Christopher Grieb. In the interpleader action, the Bank requested the Court to enter an order directing the Bank to place the funds frozen in Grieb's account into an account designated by the Court. The Bank also requested that the Court award attorneys' fees to the Bank. Grieb filed his Answer to the Bank's Cross-Bill on February 6, 2003. The Bank filed a Motion for Summary Judgment on November 18, 2004. Subsequently, on December 20, 2004, Cross-bill Respondent Grieb filed a Motion for Summary Judgment. Finally, on January 13, 2005, Complainant filed his Motion for Summary Judgment.[1] A hearing on these motions was held on January 18, 2005, and the parties submitted briefs on the issues.

## Issues Presented

Whether Virginia Code § 8.4A-204 preempts Complaint's common-law tort and contract claims.

---

[1] Complainant's Motion to Transfer from the Equity to Law side and demand for jury and Grieb's Motion to Sever Cross-bill for trial are rendered moot by virtue of the Court's ruling recited herein.

Whether Respondent Bank is entitled to attorneys' fees and costs pursuant to its cross-bill for interpleader.

*Analysis*

A trial court may enter judgment in favor of the moving party if it appears from the pleadings or admissions that no material fact is genuinely in dispute. Va. Sup. Ct. R. 2:21 (2004); *Ciejek v. Laird*, 238 Va. 109, 113 (1989).

Respondent maintains that Grieb, as CEO of Piedmont, was authorized to make the transfer from the Piedmont Account to his personal account. However, assuming without conceding that the transfer of funds was not authorized by Piedmont, Respondent asserts that Complainant is not entitled to relief beyond the remedy set forth in Va. Code § 8.4A-204. Complainant argues that his conversion claim is not preempted by Va. Code § 8.4A-204, and he is entitled to damages based on his common law claims.

When a bank acts on an unauthorized payment order, the bank must refund any payment of the payment order received from the customer and must pay interest on the refundable amount from the date of the payment to the date of the refund. Va. Code § 8.4A-204(a) (2004). This provision of the Virginia Code provides the exclusive remedy in the event of an unauthorized payment order. In the Official Comment to Va. Code § 8.4A-102, the drafters state that their intention was to "use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks, and establish limits on liability." Va. Code § 8.4A-102 (Official Comment). The competing interests of banks providing funds transfer services and the commercial organizations that rely on these services were considered, and the rules that were created to govern wire transfers represent a delicate balancing of those interests. *Id*. Thus, these rules were "intended to be the exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by particular provisions of the Article." *Id*. The legislature deemed it inappropriate to look to common law to create rights, duties, and liabilities inconsistent with those stated under the Code. *Id*.

There is no Virginia case law which addresses the exclusivity of Article 4A. Courts in other jurisdictions have declared Article 4A of the Uniform Commercial Code to provide the exclusive remedy in cases of allegedly fraudulent transfers. *See Centre-Point Merchant Bank, Ltd. v. American Express Bank, Ltd.*, 913 F. Supp. 202, 208 (S.D. N.Y. 1996). While other courts have ruled that common law claims are not preempted by the Uniform Commercial Code, those courts have then engaged in fact-specific inquires to

determine whether claims presented before them are inconsistent with the purpose of the Uniform Commercial Code. *See Banca de la Provincia de Buenos Aires v. Baybank Boston, N.A.*, 985 F. Supp. 364, 370-71 (S.D. N.Y. 1997). These courts have not strayed from the principle that Article 4A is the exclusive remedy in "any situation covered by particular provisions of the Article." *Sheerbonnet, Ltd. v. American Express Bank, Ltd.*, 951 F. Supp. 403, 408 (S.D. N.Y. 1996). They have simply permitted plaintiffs to bring common law claims for actions that do not fall within the provisions of the Uniform Commercial Code.

In his amended bill of complaint, Complainant alleges that the Bank's failure to permit Complainant to cancel the unauthorized transactions, the Bank's failure to restore funds to the corporate account, the Bank's improper charges against the account, and the corporation's failure to use reasonable care in disbursing funds from the account constitute breach of contract. However, these allegations fall squarely within the confines of Va. Code § 8.4A-420. Additionally, Complainant alleges that the Bank's exercise of dominion and control over the funds comprising the unauthorized payment is conversion; however, this claim, too, involves activities contemplated by Va. Code § 8.4A-420. Finally, Complainant argues that he should be allowed to bring a claim of conversion for the Bank's repeated refusal to return the funds to his account after being made aware that the payment orders were unauthorized. However, this is not the case. There is no dispute that Complainant and Grieb were in a disagreement over the proper ownership of the funds in question. The Bank's decision to hold the funds pending resolution of the dispute was not illegal; indeed, the Bank filed an interpleader action pursuant to Va. Code § 8.01-364, offering to submit the funds to the Court so that the Court could determine the proper party to whom the funds were payable.

The Virginia interpleader statute was created to cover situations in which possibly conflicting litigation could arise when there are multiple claimants to the same funds. *Prudential Ins. Co. v. Clark*, 48 Va. Cir. 557, 559 (Rockingham County 1999). A stakeholder need only have a reasonably articulable fear of inconsistent claims to invoke interpleader. *Id.* If the interpleading party submits the disputed funds to the court, the court may order the party dismissed from further liability. Va. Code 8.01-364 (2004). The court has discretion to award costs and attorneys' fees to the stakeholder in an interpleader action whenever the plaintiff has acted in good faith and it is fair and equitable to do so. *See Pettus v. Hendricks*, 113 Va. 326, 332 (1912).

In the present case, the Bank had a reasonable fear of competing claims to the disputed funds by Grieb and Schlegel, who were involved in a highly contentious legal dispute over the ownership of Piedmont at the time the Cross-bill for Interpleader was filed. The Bank was not legally obligated to

choose sides in the dispute and expose itself to multiple liability. Rather, the Bank has shown a willingness throughout these proceedings to submit the disputed funds to the Court so that the Court may determine the rightful ownership of those funds. However, Schlegel has refused this offer, thus requiring the intervention of the Court on this matter. Thus, the Court finds that the Bank should be awarded reasonable attorneys' fees and that the Complainant is responsible for the reasonable costs incurred by the litigation of this matter. Grieb may also be obligated to the Bank for fees and costs.

## Conclusion

The Bank's Motion for Summary Judgment on its Cross-Bill for Interpleader and on Plaintiff Kurt G. Schlegel's Bill of Complaint is hereby granted. Complainant's Motion for Summary Judgment is denied, as is the Motion for Summary Judgment filed by Grieb.

## April 26, 2005

This matter comes before the Court on Defendant Bank of America's ("Bank") Motion for an Award of Attorney's Fees and Costs. Pursuant to a letter opinion dated March 1, 2005, this Court granted Defendant Bank's Motion for Summary Judgment on Plaintiff's Bill of Complaint on the grounds of U.C.C. preemption and on the Cross-Bill for Interpleader. This Court denied a Motion for Summary Judgment submitted by Plaintiff Kurt G. Schlegel. By virtue of this ruling, the Bank's claim against Cross-Bill Defendant Christopher C. Grieb is moot. The Court also determined that the Bank is entitled to reasonable costs and attorney's fees.

The Bank has requested an award of $72,615.55. A hearing on the amount and allocation of attorney's fees was held on March 14, 2005. All sides filed briefs, and Defendant Bank filed an affidavit from Daniel J. Meador, Jr., a local attorney, acting as an expert witness.

## Issues

Whether an award of the requested attorney's fees and costs to the Defendant Bank is reasonable in an interpleader action, and, if so, how the award should be allocated.

*Argument*

Under the so-called "American Rule," a trial court should not award attorney's fees and costs to a party merely because that party prevailed on an issue or cause. *Tonti v. Akbari*, 262 Va. 681 (2001). The purpose of this rule is "to avoid stifling legitimate litigation by the threat of the specter of burdensome expenses being imposed on the unsuccessful party." *Id.* However, situations do arise in which an award of fees to the prevailing party is appropriate. For example, the Virginia Supreme Court has determined that fees may be awarded to a disinterested stakeholder in an interpleader action. *Pettus v. Hendricks*, 113 Va. 326 (1912). In *Pettus*, the Court noted that, when a party has acted in good faith and has grounds on which to base his interpleader action, "he is entitled to his costs out of the fund in his hands or which he may pay into court . . . [T]hese costs may include an attorney's fee." *Id.* at 332 (citation omitted). This rule continues to be followed by other Virginia circuit courts. *See Golden Rule Ins. Co. v. Jarvis*, 53 Va. Cir. 393, 394 (City of Waynesboro 2000); *Prudential Ins. Co. v. Clark*, 48 Va. Cir. 557, 560 (Rockingham County 1999).

This Court has already determined that the Bank's interpleader action in this case is proper because the Bank is a disinterested stakeholder subject to competing claims of liability. Thus, reasonable attorney's fees may be awarded to the Bank according to the Court's discretion. Plaintiff contends that the costs incurred by the Bank were simply part of the cost of doing business. However, the Bank requires all customers to sign a Deposit Agreement, which plainly includes a right to claim fees in the event of a legal dispute. Further, although the Bank does have a statutory obligation to return the funds with interest under Va. Code §8.4A-204, the Bank does not have any obligation to become involved in intra-corporate disputes or accrue costs relating to their resolution. This case does not simply involve the regular cost of doing business.[2]

In awarding costs and fees in interpleader actions, Virginia courts have not awarded an amount greater than the interpleaded funds. *See Pettus*, 113 Va. at 332; *Golden Rule Ins. Co.*, 53 Va. Cir. at 397. Indeed, courts have declined to award

---

[2] The Bank asserts that, even if an award of costs and attorney's fees is not appropriate under interpleader law, it is still contractually entitled to fees under the Deposit Agreement. Although Piedmont would be contractually liable for these fees under the agreement, the Bank is entitled to fees from the claimants to the escrowed funds as matter of equity.

fees that may be disproportionate to the amount of the interpleaded funds. *See id.*, citing *Manufacturers Life Ins. Co. v. Johnson*, 385 F. Supp. 852, 854 (E.D. Va. 1974). The reasonableness of the award of fees depends on the particular facts. Schlegel asserts that the Bank did not seek to relieve itself of liability for more than three years after the suit was filed. A review of the record, however, reveals that the Defendant Bank filed its Cross-Bill for Interpleader on January 7, 2003, a month after Schlegel and Grieb reached a resolution as to the ownership of the funds. Resolution of this case was delayed only because Plaintiff pursued his claim of conversion. The Court declines to award the full amount of requested attorney's fees, however, because the vast majority of these fees were incurred in defending the wrongful conversion claim, and an award for such fees is not appropriate in an interpleader action. Although both Schlegel and Grieb are responsible for payment of the awarded costs and attorney's fees, Schlegel initiated this lawsuit *pro se*, filed numerous ungrounded motions, and protracted the litigation. Thus, he is responsible for the vast majority of the costs and fees incurred.

According to the facts of this case, the Court finds that an award of fees totaling 20% of the interpleaded funds is reasonable, as the Bank was forced to spend an extraordinary amount of time and money in defending and prosecuting the interpleader. Therefore, this Court directs that the interpleaded funds are to be divided equally between Schlegel and Grieb, with the Bank then subtracting 95% of the awarded fees from Schlegel's share and 5% of the awarded fees from Grieb's share.

## Conclusion

The Defendant's Motion for an Award of Attorney's Fees and costs is granted in part.