COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Raphael
Argued at Richmond, Virginia

PUBLISHED

TRAVIS ALEXANDER BLAND HENDERSON, S/K/A
 TRAVIS ALEXANDER BLAND-HENDERSON

                                                        OPINION BY
v.        Record No. 1359-21-2                JUDGE STUART A. RAPHAEL
                                                        APRIL 11, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Aaron C. Forstie, Senior Assistant Public Defender, for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The word *shall* has multiple possible meanings. We confront here yet another statute that

uses *shall* and are asked to decide whether the *shall* is mandatory or directory. When a statute

uses *shall* to call for action by a public official or public body, our Supreme Court and this Court

have generally read the *shall* as directory (*should* or *will*), not mandatory (*must*), unless the

context suggests otherwise. As a natural corollary to that proposition, we conclude that when a

statute uses *shall* to command action by a private litigant, it is best understood as mandatory

unless the context suggests otherwise. Applying that rule of construction, we conclude that the

defendant here waived his request for jury sentencing under Code § 19.2-295(A) because he

failed to file his demand "at least 30 days" before trial.

BACKGROUND

A jury convicted Travis Alexander Bland-Henderson of possessing a firearm after being previously convicted of a violent felony, and the trial judge sentenced him to the mandatory minimum of five years' incarceration. Bland-Henderson raises three arguments on appeal: the trial court was wrong to find that he waived his demand for jury sentencing by failing to request it within the 30 days specified by Code § 19.2-295(A); he should have been allowed to question prospective jurors about their views on mandatory-minimum sentences; and the prosecution failed to prove that he knowingly possessed a firearm.

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In September 2018, Bland-Henderson was convicted of conspiracy to commit robbery in violation of Code §§ 18.2-22 and 18.2-58. Virginia law classifies that offense as a "violent felony." Code § 17.1-805(C). A subsequent conviction for possessing a firearm constitutes a Class 6 felony that is punishable by "a mandatory minimum term of imprisonment of five years." Code § 18.2-308.2(A).

On the evening of September 14, 2020, Officer Ja-Ontay Wilson was on patrol in the City of Richmond when he observed Bland-Henderson and another man running across the street. Bland-Henderson was wearing a "grayish Polo shirt" and carrying a "silver item in his hand" that Wilson "believed to be a firearm." Wilson gave chase on foot. When Wilson shouted to stop,

- 2 -

Bland-Henderson turned around to look, and Wilson "clearly" saw Bland-Henderson toss a firearm. Wilson saw where it landed. Bland-Henderson kept running, and Wilson kept up the chase, keeping Bland-Henderson in sight the whole time until another police officer apprehended him. Returning to the spot where he saw Bland-Henderson throw away the gun, Wilson recovered a silver .38 caliber pistol with a loaded magazine. The grand jury indicted Bland-Henderson for possessing a firearm after being convicted of a violent felony.

The trial court scheduled Bland-Henderson's jury trial to begin on September 21, 2021. Virginia law provides that a defendant whose guilt is determined by the jury will have the sentence decided by the court unless the defendant elects before trial for the jury to determine the sentence as well. *See* Code §§ 19.2-295(A), 19.2-295.1. "Such request for a jury to ascertain punishment *shall* be filed as a written pleading with the court at least 30 days prior to trial." Code § 19.2-295(A) (emphasis added). Bland-Henderson filed his written request for jury sentencing on September 8, however, only 13 days before trial.

When the trial began, the court denied Bland-Henderson's motion for jury sentencing as untimely, rejecting his suggestion that a continuance was the remedy for his late filing. The court interpreted the *shall* in Code § 19.2-295(A) as mandatory, concluding that Bland-Henderson waived his request by not filing it at least 30 days before trial:

> When the legislature tell[s] me *shall*, that means *shall*. When the legislature tells me *may*, that means they get to use discretion. This is a *shall*. You have to file 30 days ahead of time. It is waived.

(Emphasis added.) Bland-Henderson also argued that, even if he had waived jury sentencing, he had the "right to inform the jury" during voir dire that the charge carried a five-year mandatory-minimum prison sentence. The trial court disagreed, ruling that such information was irrelevant under Code § 19.2-262.01 because the jury would not determine the sentence.

- 3 -

After the Commonwealth presented its evidence and the trial court denied his motion to strike, Bland-Henderson presented testimony from his friend of 15 years, Antonio Kornegay. Kornegay testified that he had been with Bland-Henderson shortly before the arrest. Although Bland-Henderson was wearing tightly fitting jeans and a polo shirt, Kornegay saw no unusual bulge in his clothing that suggested that Bland-Henderson might be concealing a gun. Kornegay added that he had "never seen" Bland-Henderson with a gun.

After the court denied Bland-Henderson's renewed motion to strike, the jury found him guilty. The trial court imposed the mandatory-minimum sentence of five years' incarceration. Bland-Henderson noted a timely appeal.

ANALYSIS

A. *A defendant waives jury sentencing under Code § 19.2-295(A) by failing to request it at least 30 days before trial (Assignment of Error 1).*

Bland-Henderson contends that the trial court erred when it interpreted the *shall* in Code § 19.2-295(A) to eliminate the court's discretion to permit jury sentencing when he failed to request it at least 30 days before trial. We review such questions of statutory construction de novo. *Rock v. Commonwealth*, 76 Va. App. 419, 431 (2023).

The statute here provides that when a jury determines guilt, the trial court will determine the punishment unless the defendant requests jury sentencing. Code § 19.2-295(A). To request jury sentencing, the defendant is given a *shall* command: "Such request for a jury to ascertain punishment *shall* be filed as a written pleading with the court at least 30 days prior to trial." *Id.* (emphasis added).

Bland-Henderson urges that we read the *shall* as directory, not mandatory. The Commonwealth responds that we should treat the *shall* as mandatory. Both sides quote language from cases decided by our Supreme Court or this Court that putatively support their positions.

To resolve this dispute, we first describe the interpretive problems surrounding *shall* and survey how Virginia appellate courts have wrestled with its ambiguities. We then adopt a modest presumption that best reconciles Virginia's appellate caselaw: we presume *shall* to mean *must* when the statute in question commands action by a private litigant, unless the context suggests otherwise. And we find that this presumption requires rejecting Bland-Henderson's claim that the trial court here had discretion to permit a late filing.

1. *The problem with "shall"*

*Shall* is inherently ambiguous. The Oxford English Dictionary (O.E.D.) has traced the origins of the word to the 8th Century and has catalogued 29 separate usages. *See Shall*, *The Compact Edition of the Oxford English Dictionary* (1971). Despite that impressive variety of meaning, *shall* is rarely used in common parlance; yet it flourishes among lawyers and legislative drafters.[1]

The current edition of Black's Law Dictionary identifies five uses of *shall* in legal texts: (1) "Has a duty to" or "is required to"; (2) "Should"; (3) "May"; (4) "Will"; and (5) "Is entitled to." *Shall*, *Black's Law Dictionary* (11th ed. 2019). Black's recommends that "[o]nly sense 1 is acceptable under strict standards of drafting." *Id.* And that "is the mandatory sense that drafters typically intend and that courts typically uphold." *Id.*

Still, *shall*'s capacity for shapeshifting has led to confusion and litigation throughout the United States. Thomson-West's *Words and Phrases* "bulges with more than 120 pages of

---

[1] *See, e.g.*, Alex MacDonald, *Shall We Proceed? Ebbs, Flows, and Futility in the Debate over Words of Authority*, 20 Scribes J. Legal Writing 81, 82 (2022) ("[*Shall*] has largely disappeared from ordinary speech."); Bryan A. Garner, *Legal Writing in Plain English* 105 (2d ed. 2013) ("*Shall* isn't plain English. Chances are it's not a part of your everyday vocabulary, except in lighthearted questions that begin, 'Shall we . . . ?' But legal drafters use *shall* incessantly. They learn it by osmosis in law school, and law practice fortifies the habit."); Michele M. Asprey, *Shall Must Go*, 3 Scribes J. Legal Writing 79, 79 (1992) ("[*Shall* is] hardly ever used outside the legal community.").

citations devoted to *shall*. Disputes have arisen in nearly every jurisdiction, and in each, courts have ascribed multiple senses to the word, ranging from mandatory to permissive to simply precatory." Alex MacDonald, *Shall We Proceed? Ebbs, Flows, and Futility in the Debate over Words of Authority*, 20 Scribes J. Legal Writing 81, 83 (2022). The United States Supreme Court observed nearly three decades ago that "[t]hough 'shall' generally means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.'" *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995) (Ginsburg, J.). Judge Easterbrook put it more bluntly: "'Shall' is a notoriously slippery word that careful drafters avoid." *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) (Easterbrook, J.). "In just about every jurisdiction, courts have held that *shall* can mean not just *must* and *may*, but also *will* and *is*." Bryan A. Garner, *Legal Writing in Plain English* 105 (2d ed. 2013) (footnotes omitted). "As Joseph Kimble, a noted drafting expert, puts it: 'Drafters use it mindlessly. Courts read it any which way.'" *Id.* (quoting Joseph Kimble, *The Many Misuses of "Shall,"* 3 Scribes J. Legal Writing 61, 71 (1992)).

Two schools of thought have emerged to exert greater discipline on *shall*'s use in legal drafting. One school maintains that *shall* should be used "only to mean 'has a duty to' . . . . This solution leads to much greater consistency than is generally found in American drafting." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 952 (3d ed. 2011). The other school of thought believes that legal drafters are incapable of using *shall* consistently, so the better practice is to avoid using it at all. *Id.* at 953 (noting that this view posits "that legal drafters cannot be trusted to use the word *shall* under any circumstances. Under this view, lawyers are not educable on the subject of *shall*, so the only solution is complete abstinence."). This second approach pushes drafters to "choose a more appropriate word: *must*, *may*, *will*, *is entitled to*, or some other expression." *Id.*; *see also* Kimble, *supra*, at 71 ("That seems to be the best argument for

abandoning *shall*—it would make the drafter think and write more clearly to begin with.").[2]  In the United States, this second school of thought has emerged in the past two decades as the consensus view among legal scholars, who have encouraged the rest of the profession to avoid *shall* whenever possible.[3]

   That view is gaining traction among courts.  In the mid-1990s, the federal Standing Committee on Rules of Practice and Procedure "decided to abolish *shall*" when updating the civil, criminal, appellate, evidence, and bankruptcy rules.  Joseph Kimble, *Lessons in Drafting from the New Federal Rules of Civil Procedure*, 12 Scribes J. Legal Writing 25, 79 (2008).  Over the next decade, the revisions to the five sets of federal rules eliminated "almost 500 *shall*s": 375 were converted to *must*s (75%), 50 were changed to present-tense verbs, 2 were changed to *will*, 14 were changed to *should*, 25 were changed to variations using *may*, and 35 were eliminated by "tightening" the text.  *Id.* at 79-84.[4]

---

[2] This school of thought is sometimes called the "ABC rule" after "certain Australian, British, and Canadian drafters" who pioneered this approach in the late 1980s.  *Garner's Dictionary of Legal Usage*, *supra*, at 953.  *See, e.g.*, *Must we continue with "shall"?*, 63 Austl. L.J. 75, 76 (1989) ("Not only will the change to 'must' benefit the general community; it will also save members of the legal profession from confusion and imprecision.  Experts in legal drafting from at least the middle of the last century have complained about the misuse of 'shall' in legal documents.").

[3] *See, e.g.*, Bryan A. Garner, *The Redbook: A Manual of Legal Style* 543 (3d ed. 2013) ("Avoid *shall*"); Joseph Kimble, *Lessons in Drafting from the New Federal Rules of Civil Procedure*, 12 Scribes J. Legal Writing 25, 78 (2008) ("Banish *shall*"); Richard C. Wydick, *Plain English for Lawyers* 63-64 (5th ed. 2005) (condemning *shall* as "the biggest troublemaker," "slippery," and the creator of "booby traps"); Kimble, *The Many Misuses of "Shall," supra*, at 61 ("*shall* is the most misused word in the legal vocabulary"); Asprey, *supra*, at 79 ("abandon *shall*").  *Cf.* Kenneth A. Adams, *A Manual of Style for Contract Drafting* ¶ 2.37 at 34 (2d ed. 2008) ("It would in fact be a good idea to eliminate *shall* from court rules, statutes, and consumer contracts.  But there's no reason to automatically apply that approach to business contracts—they serve a different function and address a different audience.").

[4] After removing the *shall* in 2007 from the federal summary-judgment provision, Fed. R. Civ. P. 56, the drafters restored it in 2010 because the stakeholders could not agree whether— when there are no material facts in dispute—the court *should* or *must* enter summary judgment.

The Rules of the Supreme Court of Virginia have followed a similar path.  In April 2019, the Advisory Committee on Rules of Court published for public comment proposed revisions to systematically replace the *shall*s.[5]  The proposal was based on a recommendation from the Boyd-Graves Conference.[6]  After a second public-comment period,[7] the Supreme Court promulgated those changes in September 2020,[8] replacing or eliminating more than 1,800 *shall*s in our rules of court.[9]

---

*See* Kimble, *Lessons in Drafting*, *supra*, at 84-85; Steven S. Gensler, *Must, Should, Shall*, 43 Akron L. Rev. 1139, 1139-60 (2010).

[5] *See* Memorandum from the Advisory Committee on Rules of Court, Judicial Council of Virginia, to the Bar and Bench of Virginia (Apr. 12, 2019), https://www.courts.state.va.us/courts/scv/call_for_comment/draft_shall_rules_revisions.pdf.

[6] *Id.* at 1.  *See* Boyd-Graves Conference, 2019 Booklet, Minutes of the Meeting on the Full Conference (Oct. 5-6, 2018) at 6, https://www.vba.org/resource/resmgr/boyd-graves/2019_booklet/2019_B-G_Booklet-1.pdf; Boyd-Graves Conference, 2018 Booklet, *Report of the Committee on Using "Shall" in Legislative Drafting* (Aug. 16, 2018), https://www.vba.org/resource/resmgr/boyd-graves/2018_booklet/2018_Boyd-Graves_Booklet-Par.pdf ["2018 Boyd-Graves Report"].

[7] *See* Memorandum from the Supreme Court of Virginia to the Bar and Bench of Virginia (Sept. 3, 2020), https://www.courts.state.va.us/courts/scv/call_for_comment/notice_request_for_comment_shall.pdf

[8] *See* Order (Va. Nov. 23, 2020) (effective Mar. 1, 2021) (Rules of Court, excluding Parts 2, 3B, 3C, 3D, 6), https://www.courts.state.va.us/courts/scv/amendments/rule_1_1_et_seq.pdf; Order (Va. Nov. 13, 2020) (effective July 1, 2021) (Rules of Court, Part Two), https://www.courts.state.va.us/courts/scv/amendments/part_two.pdf.  The preambles of both orders recited that "[t]he purpose of these amendments is to clarify the meaning of the word 'shall' formerly appearing in these Rules and not to change existing law."

[9] *See* Proposal to Replace "Shall" in the Rules of Court (Apr. 2019) (redline comparison), https://www.courts.state.va.us/courts/scv/call_for_comment/proposed_shall_replacements_virginia_rules_for_pub.pdf.
Like the 2010 amendments to Rule 56 of the Federal Rules of Civil Procedure, the 2019 amendments to Virginia's rules kept the *shall* in Virginia's summary-judgment provision, Rule 3:20 ("If it appears . . . that the moving party is entitled to judgment, the court *shall* grant the motion." (emphasis added)).  *See* note 4 *supra*.

State legislatures, by contrast, have been slow to change.  Most legislative-style manuals explicitly permit the use of *shall*, though they generally specify that it should be used only to impose a mandatory duty or obligation.[10]  And to change course would pose "a Herculean task."[11]  A computer search of the current Code of Virginia reveals more than 26,000 *shall*s.  So at least for now, we must determine what the General Assembly intended by the *shall* that it used in Code § 19.2-295(A).  *See, e.g.*, *Va. Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 262-63 (2018) ("When construing a statute, our primary objective 'is to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012))).

2.       *Virginia's appellate treatment of "shall"*

As in other jurisdictions, the meaning of *shall* has been litigated dozens of times in the Supreme Court of Virginia and this Court.  Three interpretive strands appear in our jurisprudence.

The first line of cases follows *Pettus v. Hendricks*, 113 Va. 326 (1912), which held that *shall* can be read as "permissive or mandatory in accordance with the subject-matter and context." *Id.* at 330.  *See Berry v. Fitzhugh*, 299 Va. 111, 117 (2020); *Johnson v. Arlington Cnty.*, 292 Va. 843, 851 (2016); *TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 263 Va. 116, 121 (2002); *Huffman v. Kite*, 198 Va. 196, 202 (1956).  As our Supreme Court put it in 1956, "the words 'shall' and 'may' are used interchangeably at times and 'shall' is often interpreted to be . . . advisory or directory." *Huffman*, 198 Va. at 202.  The Court recently restated that observation in 2020.  *See Berry*, 299 Va. at 117 (quoting *Pettus*).

---

[10] *See* 2018 Boyd-Graves Report, *supra* note 6, at 3 & Ex. 2 (jurisdictional survey).

[11] *Id.* at 6.

A second line of authority holds that *shall* is "generally used in an imperative or mandatory sense." *Schmidt v. City of Richmond*, 206 Va. 211, 218 (1965); *see also City of Waynesboro Sheriff's Dep't v. Harter*, 222 Va. 564, 566 (1981). Echoing that idea, this Court recently noted the general rule "that '*shall* is mandatory and *may* is permissive.'" *McBride v. Commonwealth*, 75 Va. App. 556, 572 (2022) (quoting *Wal-Mart Stores East, LP v. State Corp. Comm'n*, 299 Va. 57, 70 n.5 (2020)), *petition for appeal granted*, No. 220715 (Va. Feb. 21, 2023).

The Supreme Court applied a twist to this principle in *Rickman v. Commonwealth*, 294 Va. 531 (2017). *Rickman* said that "a 'shall' command in a statute always means 'shall,' not 'may,'" but "'the use of the term "shall" in a statute is generally construed as directory rather than mandatory,' and, consequently, no specific, exclusive remedy applies unless 'the statute manifests a contrary intent.'" *Id.* at 537-38 (quoting *Hood v. Commonwealth*, 280 Va. 526, 541 (2010)). We will return to *Rickman* shortly.

A third line of authority—involving the largest number of cases—addresses statutes that command action by a *public official* or *public body*. In 1888, our Supreme Court held that a *shall* that is used in a "statute directing the mode of proceeding by *public officers* is to be deemed directory, and a precise compliance is not to be deemed essential to the validity of the proceedings, unless so declared by statute." *Nelms v. Vaughan*, 84 Va. 696, 699 (1888) (emphasis added). Our courts have applied *Nelms* many times to statutes that used *shall* to require action by courts, governmental agencies, or public officers, holding that the *shall* command in that context is directory unless the text shows otherwise.[12]

---

[12] *See Reyes v. Commonwealth*, 297 Va. 133, 141-42 (2019) (*shall* command directed at circuit court); *Horner v. Dep't of Mental Health*, 268 Va. 187, 206 (2004) (circuit court), *overruled on other grounds by Woolford v. Va. Dep't of Tax.*, 294 Va. 377 (2017); *Butler v. Commonwealth*, 264 Va. 614, 619-20 (2002) (judicial officer); *Tran v. Bd. of Zoning App. of Fairfax Cnty.*, 260 Va. 654, 657-58 (2000) (board of zoning appeals); *Commonwealth v. Wilks*,

Bland-Henderson suggests that we apply *Rickman* here. He says that we should read the *shall* in Code § 19.2-295(A) to mean *shall*, not *may*, but that it does not necessarily follow that he waived jury sentencing by filing a late request. The statute, he points out, does not specify that particular sanction.

Upon closer inspection, however, *Rickman* is more properly classified in the *Nelms* line of cases because it concerned a *shall* statute commanding action by a *public body*—there, a circuit court. *Rickman* involved Code § 37.2-906(A)(ii), which provides that a trial court "shall . . . schedule a hearing within 90 days to determine whether probable cause exists to believe that the respondent is a sexually violent predator." The question was whether the trial court's failure to hold the probable-cause hearing within that 90-day period required the court to dismiss the Commonwealth's sexually-violent-predator petition. Although the Court's opinion in *Rickman* did not mention "public official" or "public officer," it relied on the *Nelms* line of authority to conclude that the circuit court was not required to dismiss the petition.[13]

---

260 Va. 194, 199-200 (2000) (attorney for the Commonwealth); *Jamborsky v. Baskins*, 247 Va. 506, 511 (1994) (circuit court); *Commonwealth v. Rafferty*, 241 Va. 319, 324-25 (1991) (magistrate); *Huffman*, 198 Va. at 202 (circuit court); *Ladd v. Lamb*, 195 Va. 1031, 1034-35 (1954) (clerk of court); *Nelms*, 84 Va. at 698-700 (notary public); *Boatright v. Wise Cnty. Dep't of Soc. Servs.*, 64 Va. App. 71, 80-81 (2014) (circuit court); *Robinson v. Commonwealth*, 63 Va. App. 715, 720-23 (2014) (attorney for the Commonwealth); *Hamilton v. Commonwealth*, 61 Va. App. 542, 550-51 (2013) (circuit court); *Marrison v. Dep't of Fam. Servs.*, 59 Va. App. 61, 68-70 (2011) (juvenile court); *Clark v. Va. Marine Res. Comm'n*, 55 Va. App. 328, 338 (2009) (executive-branch agency); *Harris v. Commonwealth*, 52 Va. App. 735, 733-34 (2008) (juvenile court); *Kidder v. Va. Birth-Related Neurological Injury Comp. Program*, 37 Va. App. 764, 772-73 (2002) (Virginia Birth-Related Neurological Injury Compensation Program); *Carter v. Ancel*, 28 Va. App. 76, 78-79 (1998) (Virginia Department of Social Services); *J.B. v. Brunty*, 21 Va. App. 300, 304-05 (1995) (local department of social services); *Caccioppo v. Commonwealth*, 20 Va. App. 534, 536-38 (1995) (attorney for the Commonwealth).

[13] *See Rickman*, 294 Va. at 538 & n.2 (citing *Jamborsky*, *Tran*, *Horner*, *Butler*, *Wilks*, *Jackson*, *Rafferty*, *Turner*, *Huffman*, and *Nelms*).

3. *The presumption that "shall" is mandatory when the statute commands action by a private litigant*

Does the "public officer" limitation in the *Nelms* line of cases mean, conversely, that a *shall* command is presumptively mandatory when it requires action by *private* actors? Comparatively fewer cases have arisen in that context.

But our Supreme Court and this Court have consistently treated *shall* as mandatory in statutes or rules that impose duties on private litigants, concluding that a private party forfeited a right or privilege by failing to comply with the requirement, unless the statutory context suggested otherwise. *See Condrey v. Childress*, 203 Va. 755, 757-58 (1962) (failure to file timely petition for appeal); *Creteau v. Phoenix Assurance Co*., 202 Va. 641, 643-44 (1961) (failure by insured to notify carrier of claim); *Bass v. Commonwealth*, 70 Va. App. 522, 533-36 (2019) (failure to file timely speedy-trial objection); *Arrington v. Commonwealth*, 53 Va. App. 635, 640-41 (2009) (failure to file timely suppression motion); *Rambo v. Commonwealth*, 51 Va. App. 418, 424-25 (2008) (failure to timely object to defective indictment); *Upchurch v. Commonwealth*, 31 Va. App. 48, 51 (1999) (failure to file timely suppression motion); *Uninsured Employers' Fund v. Coyle*, 22 Va. App. 157, 158-59 (1996) (failure to file timely opening brief); *Mayo v. Va. Dep't of Com.*, 4 Va. App. 520, 521-23 (1987) (failure to file timely appeal from agency decision).

The presumption that a *shall* command to a private litigant is mandatory can be rebutted, of course, by statutory text showing otherwise. Code § 19.2-266.2 provides a good example. If a criminal defendant wants to raise certain constitutional objections to the Commonwealth's evidence or to the validity of the prosecution, the defendant's "motions or objections *shall* be filed and notice given to opposing counsel not later than seven days before trial." Code § 19.2-266.2(B) (emphasis added). But the last sentence of that subsection clarifies that the trial court has discretion to permit a late filing: "The circuit court may, however, for good cause

- 12 -

shown and in the interest of justice, permit the motions or objections to be raised at a later time."

*Id.*[14]

Even without such an explicit good-cause exception, the statutory text and context may still overcome the presumption that a *shall* command directed at a private litigant is mandatory. In *Hood*, for instance, the Supreme Court declined to read the *shall* in Code § 37.2-907(A) as mandatory because doing so would conflict with another statute and risk a due-process violation. 280 Va. at 541-42. Code § 37.2-907(A) provided that if an alleged sexually violent predator "refused to cooperate" with the initial mental-health examination required by the Civil Commitment of Sexually Violent Predators Act, then "any expert appointed to assist the respondent *shall not be permitted to testify* at trial nor shall any report of any such expert be admissible." *Id.* at 541 (quoting Code § 37.2-907(A)) (emphasis altered). The respondent in *Hood*, initially unrepresented by counsel, declined a mental-health examination, but after having the benefit of counsel, changed his mind and sought to cooperate. *Id.* at 532-33. Still, the trial court construed the *shall* to bar him from introducing the testimony of his own expert in the commitment proceeding. *Id.* at 534. The Supreme Court reversed, concluding that the statute conflicted with another statute, Code § 37.2-904, *id.* at 540-42, which provided that the defendant's refusal to cooperate "*may* bar the respondent from introducing his own expert psychiatric or psychological evidence," *id.* at 540 (quoting Code § 37.2-904). To harmonize the

---

[14] *See, e.g., Bass*, 70 Va. App. at 534 ("[A]ssuming no good cause is shown, a defendant who fails to raise a written motion or objection seeking dismissal of charges based on a violation of his speedy trial rights, waives that objection."); *Arrington*, 53 Va. App. at 639-40 ("[A] defendant seeking to suppress evidence based on a violation of his Fourth Amendment rights must file a suppression motion no later than seven days before trial, absent 'good cause shown and in the interest of justice.'" (quoting *Upchurch*, 31 Va. App. at 51)); *Rambo*, 51 Va. App. at 424-25 ("We have stated that '[t]he plain language of the Rule states that the requirements of Rule 3A:9(b)(1) are mandatory, and "failure to raise such [defenses] properly is a waiver," unless "good cause" is shown.'" (quoting *Harris v. Commonwealth*, 39 Va. App. 670, 675 (2003) (en banc))).

*shall* and the *may* in those two provisions, and to avoid a potential due-process violation from depriving the defendant of his liberty without the advice of counsel, the Court construed the *shall* in Code § 37.2-907(A) to have "a discretionary, rather than mandatory, application." *Id.* at 542.

Synthesizing these cases, and as a natural corollary to the *Nelms* public-officer line of authority, we hold that when a statute or rule uses *shall* to command action by a private litigant, it is best understood as mandatory unless the statutory text or context suggests otherwise. This principle best explains the results in the private-litigant cases surveyed above.[15] It also tracks the default rule recommended as a best practice by Justice Scalia and Professor Garner: "when the word *shall* can reasonably be read as mandatory, it ought to be so read." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 114 (2012); *accord Shall*, *Black's Law Dictionary*, *supra* (stating that only the mandatory sense "is acceptable under strict standards of drafting").

4. *The mandatory "shall" in Code § 19.2-295(A)*

Applying that presumption here, we conclude that the *shall* in Code § 19.2-295(A) is mandatory. To request jury sentencing, the defendant's request "shall be filed as a written pleading with the court at least 30 days prior to trial." Code § 19.2-295(A). Unlike Code § 19.2-266.2(B), which permits a late filing of constitutional objections for "good cause shown and in the interest of justice," no similar language permits a late filing of a jury-sentencing

---

[15] To be sure, the public-officer/private-litigant distinction results in asymmetrical treatment of the two classes of litigants when *shall* commands directed at public officers are treated as presumptively directory, not mandatory. *E.g.*, *Wilks*, 260 Va. at 199-200 (holding that the failure by the Commonwealth's Attorney to file the required 21-day statutory notice that the defendant's property had been seized did not deprive the circuit court of jurisdiction to adjudicate the Commonwealth's civil-forfeiture claim); *Kidder*, 37 Va. App. at 772-73 (holding that the Virginia Birth-Related Neurological Injury Compensation Program did not forfeit its defense of the claim by filing the response later than the 30 days required by statute). That asymmetry dates to the 1888 decision in *Nelms*; it is a necessary consequence of the common-law rule that *shall* commands directed at "public officers" are presumptively directory, not mandatory. 84 Va. at 699.

- 14 -

demand. "[W]hen the General Assembly has used specific language in one instance but omits that language or uses different language when addressing a similar subject elsewhere in the Code, [the Court] must presume that the difference in the choice of language was intentional." *Morgan v. Commonwealth*, ___ Va. ___, ___ (Dec. 29, 2022) (second alteration in original) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011)). Indeed, "'the General Assembly "knows how" to include such language in a statute to achieve an intended objective,' and therefore, omission of such language in another statute 'represents an unambiguous manifestation of a contrary intention.'" *Id.* (quoting *Brown v. Commonwealth*, 284 Va. 538, 545 (2012)).

Moreover, nothing else in the statutory scheme suggests that the *shall* in Code § 19.2-295(A) should be read as merely directory or discretionary. Unlike the respondent in *Hood*, for instance, Bland-Henderson does not claim that a mandatory interpretation of *shall* in the jury-sentencing statute would conflict with another statute, let alone risk a constitutional violation.

Nor is the 30-day requirement here a useless formality. For jury sentencing, the prosecution must "provide to the defendant 14 days prior to trial notice of its intention to introduce copies of final orders evidencing the defendant's prior criminal history, including prior convictions and punishments imposed." Code § 19.2-295.1. That notice must include "(i) the date of each prior conviction, (ii) the name and jurisdiction of the court where each prior conviction was had, (iii) each offense of which he was convicted, and (iv) the punishment imposed." *Id.* The defendant's obligation to demand jury sentencing no later than 30 days before trial gives the prosecution a little longer than two weeks to compile that information before the 14-day disclosure deadline. In addition, both sides might choose to subpoena witnesses for live testimony in a jury-sentencing proceeding when they would not do so for a

- 15 -

bench trial. The 30-day period gives them adequate time to issue and serve those subpoenas. And the substance of the lawyers' preparation may be different and more elaborate for a jury trial followed by jury sentencing. For instance, voir dire about sentencing issues becomes relevant when the defendant has demanded jury sentencing. *See* Code § 19.2-262.01. *See* Part B, *infra.*

In short, because the *shall* in Code § 19.2-295(A) is mandatory and includes no good-cause exception, the court did not err in concluding that it lacked discretion to permit a late filing. The trial court correctly concluded that Bland-Henderson waived his request for jury sentencing by failing to submit his demand at least 30 days before trial.

> B.    *When the jury determines guilt but the trial court sentences, the defendant may not question prospective jurors about their views on mandatory minimums (Assignment of Error 2).*

We also reject Bland-Henderson's claim that, even if he waived jury sentencing, he had the right to tell the jury during voir dire that he faced a five-year mandatory-minimum sentence if convicted. Code § 19.2-262.01 provides that "[t]he court and counsel for either party may inform any [venire] person or juror as to the potential range of punishment to ascertain if the person or juror can sit impartially *in the sentencing phase of the case*." (Emphasis added). Relying on that same language, we recently held in *Rock* that the statute permits neither side during voir dire to inform the jury of the potential sentence when the defendant has not requested jury sentencing. 76 Va. App. at 431.

*Rock* rejected the argument that the jury would find it relevant during the guilt phase to know the mandatory-minimum sentence at stake. *Id.* at 432-33. We said that the only purpose of probing that subject would be "'to encourage the jury to acquit the defendant even though the evidence might prove him guilty,'" a construction of the statute that would be "unreasonable." *Id.* at 433 n.13 (quoting *Walls v. Commonwealth*, 38 Va. App. 273, 282 (2002)). Indeed, such questioning would "amount to little more than an effort at inviting jury nullification on the issue

- 16 -

of guilt." *Lilly v. Commonwealth*, 50 Va. App. 173, 185 (2007). "Courts . . . reject efforts by both prosecutors and defense counsel to inject issues of punishment into the guilt phase of a jury trial." *Id.* at 186.

Thus, *Rock* compels us to reject this assignment of error.

C.      *The evidence sufficed for the jury to conclude that Bland-Henderson knowingly possessed the firearm (Assignment of Error 3).*

Finally, Bland-Henderson claims that there was not enough evidence to prove that he knowingly and intentionally possessed the firearm. He maintains that someone else could have left the gun where Officer Wilson found it. Bland-Henderson argues that the Commonwealth's case was flawed because it depended on the testimony of Officer Wilson, who was running 30 to 40 feet behind him at night. He adds that Kornegay never saw him carry a gun, including that night.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010) (quoting *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995)). "Where credibility issues are resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Id.*

Bland-Henderson has failed to make that showing here. Officer Wilson testified that he saw Bland-Henderson carrying a "silver item in his hand that [Wilson] believed to be a firearm." Wilson never lost sight of him during the pursuit. Turning his head to see who was chasing him, Bland-Henderson tossed the object that Wilson then "could clearly see . . . was a firearm." After another officer apprehended Bland-Henderson, Wilson found the gun in the same spot where Bland-Henderson tossed it. "The jury 'had the right to accept the evidence of one witness and to reject that of the defendant.'" *Bryant v. Commonwealth*, 10 Va. App. 421, 427 (1990) (quoting

*Ford v. Commonwealth*, 177 Va. 889, 892 (1941)). Thus, we find no error in the trial court's refusal to strike the Commonwealth's evidence.

CONCLUSION

In sum, the trial court committed no error in striking the jury-sentencing demand as untimely, in refusing to permit voir dire about mandatory-minimum sentences, or in refusing to strike the Commonwealth's evidence.

*Affirmed.*